NATIONAL LABOR RELATIONS BOARD, Petitioner,

and

Unlicensed Division of District No. 1, MEBA/NMU, AFL–CIO, Intervenor,

v.

HOUSTON BUILDING SERVICE, INC., Respondent.

No. 90–4439.

United States Court of Appeals, Fifth Circuit.

July 2, 1991.

Margaret Luke, Aileen A. Armstrong, Dep. Assoc. Gen. Counsel, NLRB, Barbara J. Sapin, Barbara A. Atkin, Washington, D.C., for petitioner.

Sidney H. Kalban, New York City, for intervenor.

Thomas W. Moore, Veda Moore, Moore and Moore, Houston, Tex., for respondent.

Michael Dunn, Dir., Region 23, NLRB, Houston, Tex., for other interested parties.

On Application for Enforcement of an Order of the National Labor Relations Board.

Before BROWN, KING and GARWOOD, Circuit Judges.

KING, Circuit Judge:

Houston Building Service, Inc. (Houston Building), was awarded a General Services Administration (GSA) contract for janitorial services at three federal buildings. Commencing performance of the contract, Houston Building continued to employ members of the former company's union. The National Labor Relations Board (NLRB) upheld an Administrative Law Judge's (ALJ) finding that Houston Building was a successor employer and that it consequently had violated the National Labor Relations Act (NLRA) by refusing to bargain with the union and by changing the conditions of employment. The NLRB now seeks enforcement of its bargaining order.

## I.

The Unlicensed Division of District No. 1, MEBA/NMU, AFL–CIO, has been the collective bargaining representative for approximately 30 custodians who supply janitorial services at three federal buildings in Austin, Texas. Between 1980 and 1987, five successive employers performed this GSA contract, and each maintained a collective bargaining relationship with the union. Each successive employer hired the old employees, after having them complete new job applications and union authorization cards.

Housekeepers Maintenance Service and Supply, Inc. (Housekeepers), was the last employer to hold the GSA contract before Houston Building. Housekeepers recognized the union and signed a collective bargaining agreement that was to run into 1989. In late 1987, however, Houston Building won the GSA contract from Housekeepers.

Breaking from traditional precedent, Houston Building decided to hire new employees. The GSA contract, however, provided that all employees needed security clearances. Because the security procedures would take too long to obtain, Houston Building decided to hire former Housekeepers employees. On December 1, 1987, all 30 rank and file Housekeepers employees, and three Housekeepers supervisors, reported to work.

On December 9, 1987, Houston Building received a letter asking that it recognize the union, but Houston Building refused to bargain with the union. Houston Building instead mailed a letter to a GSA representative stating that Houston Building intended to subcontract its custodial work.

On December 9th, Houston Building terminated eleven of the holdover workers. Over the next few weeks, Houston Building terminated several more workers, and gradually replaced them with new employees who had passed security clearance procedures. Finally, on January 4, Houston Building determined that it was unlikely that any more new employees would clear security, and converted the remaining holdover employees to permanent status. At no time did Houston Building comply with the old collective bargaining agreement, and it did not deduct pension and health and welfare fund contributions from the employee wages, as required under the contract.

After hearings, the ALJ determined that Houston Building was a successor employer to Housekeepers, and that it therefore had violated the NLRA by refusing to recognize and bargain with the union, by terminating and/or reducing the hours of employee holdovers, and by unilaterally

changing the working conditions. The National Labor Relations Board affirmed, and ordered Houston Building to recognize and bargain with the union. The Board now asks us to enforce its order.

## II.

The question of whether Houston Building is Housekeepers successor "is primarily factual in nature and is based upon the totality of the circumstances of a given situation." *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 107 S.Ct. 2225, 2236, 96 L.Ed.2d 22 (1987). We uphold the Board's findings, so long as they are supported by substantial evidence. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

In order to support the Board's findings that Houston Building is Housekeepers successor, there must be " 'substantial continuity' between the enterprises." *Fall River*, 482 U.S. at 43, 107 S.Ct. at 2236 (citing *NLRB v. Burns Int'l Security Servs., Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 1578 n. 4, 32 L.Ed.2d 61 (1972)).

> Under this approach, the Board examines a number of factors: whether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers.

*Id.*

Of all these factors, one of the most significant is the overlap in workforces between the two entities. Thus, once a representative workforce is achieved, if "a majority of the successor's employees had been employed by its predecessor, then the successor has an obligation to bargain with the union that represented those employees," assuming that the union has made a bargaining demand. 107 S.Ct. at 2238; *see NLRB v. Fabsteel Co. of La.*, 587 F.2d 689, 694–95 (5th Cir.), *cert. denied*, 442 U.S. 943, 99 S.Ct. 2887, 61 L.Ed.2d 313 (1979).

The union did indeed present Houston Building with a bargaining demand. At that time, Houston Building's workers all were former Housekeepers workers who were performing identical work to that which they had done under Housekeepers. The working conditions, production process, and customers remained unchanged.

We evaluate whether Houston Building was a successor from the viewpoint of the employee at the time that a "substantial and representative complement" of the new employer's workforce came onto the job.[1] Considering that this particular bargaining unit worked under five owners in seven years, and that after each change in ownership the union structure had continued unabated, any employee would have assumed quite reasonably that when Houston Building hired virtually its entire workforce from Housekeepers ranks, it intended to continue the union structure.

Furthermore, much of this case is of Houston Building's own making. When it took over the GSA contract, the employees were given job applications and union authorization cards, which was a practice consistent with previous transitions. Despite the possibility of these actions misleading the employees, Houston Building never told the holdovers that their jobs only were short-term. Houston Building thus did nothing to combat the impression that any reasonable employee would have in these circumstances that the "new" job merely was a continuation of the old. While Houston Building contends that it is unfair for the NLRB to force it to deal with the union, it likely could have avoided this situation by simply telling the holdovers that they were only temporary.

"If the employees find themselves in essentially the same jobs after the employer transition and if their legitimate expectations in continued representation by their union are thwarted, their dissatisfaction

---

1. *Fall River*, 482 U.S. at 43–44, 107 S.Ct. at 2236. Because of this viewpoint, we must reject as irrelevant Houston Building's contention that this case should be decided differently simply because it was forced to use the old workers until the new workers received security clearances.

may lead to labor unrest," which is what the NLRA is intended to prevent. *Fall River*, 482 U.S. at 43–44, 107 S.Ct. at 2236. This situation arises today. Houston Building chose to rehire a workforce that had grown accustomed to new owners adopting the collective bargaining arrangements of former employers. Houston Building not only rehired these same workers, but did so in a manner which would indicate that the same practice was continuing. Because the "operations ... remain[ed] essentially the same after the transfer of ownership," *International Union of Elec., Radio and Mach. Workers v. NLRB*, 604 F.2d 689, 694 (D.C.Cir.1979), we find that the decision of the Board is supported by substantial evidence. We therefore GRANT the Board's Application for Enforcement of its Order.[2]

**2.** Houston Building claims that because it did not acquire Housekeepers' assets, we cannot hold that there was any substantial business continuity. Transfer of ownership of assets, however, is only one factor we consider. Our core inquiry remains whether, under the totality of circumstances presented, the second corporation basically has continued the business and workforce of the first.