**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 96-60878
(Summary Calendar)

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

and

DISTRICT NO. 5 -- ITPE-NMU/MEBA, AFL-CIO,

Intervenor,

versus

HOUSTON BUILDING SERVICES, INC.,

Respondent.

On Application for Enforcement of an Order of
the National Labor Relations Board
(23236-94)

September 26, 1997

Before JONES, SMITH, and STEWART, Circuit Judges.

PER CURIAM:[*]

The National Labor Relations Board (the Board) seeks enforcement of its Decision and Order

ordering Houston Building Services, Inc. (HBS) to remit payment—as a successor employer—to a

health and welfare and pension fund as part of a make whole remedy for committing an unfair labor

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

practice by refusing to bargain with a union under contract with the predecessor employer. HBS asserts that requiring it to remit payment to the fund violates Section 302 of the National Labor Relations Act. The Board counters that, *inter alia*, HBS is procedurally barred from asserting this claim because it failed to raise this argument before the Board. For the following reasons, we grant the Board enforcement of its order.

## BACKGROUND

In the fall of 1987, Housekeepers Maintenance Service & Supply, Inc. (Housekeepers)[2] lost its custodial contract with the Austin Federal Building to Houston Building Services, Inc. (HBS). Prior to losing its contract to HBS, Housekeepers had entered into a collective bargaining agreement (CBA) with the Unlicensed Division of District Number 1, MEBA/NMU, AFL-CIO (Union), effective through October 31, 1989. Among the contract terms contained in the CBA were Housekeepers' written agreements with the Union and certain trust funds to contribute certain amounts for its employees into the health, pension, and annual benefit funds (the Funds).

When HBS began operations on December 1, 1987, it hired all of Housekeepers' employees, without mentioning to the employees that it intended to hire its own employees as soon as those employees attained the required security clearance. Later, when the Union made demands on HBS to recognize the Union and to honor the CBA, HBS refused. Thereafter, the Union filed an unfair labor practice charge (ULP) against HBS, claiming HBS violated Section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 151, et seq. (ACT). The Board issued a complaint on June 27, 1988. After a hearing, Administrative Law Judge (ALJ) Cates issued a decision on December 16, 1988, concluding that HBS was a successor employer to Housekeepers and had committed a ULP

---

[2]Housekeepers employed approximately thirty employees.

by refusing to recognize and bargain with the Union. The Board adopted the ALJ's decision as its Decision and Order on September 29, 1989. *See Houston Building Service, Inc. and Unlicensed Div. of Dist. No. 1, MEBA/NMU, AFL-CIO*, 296 NLRB 101, 1989 WL 224346 (1989) (HBS I). Part of the Board's remedy was an Order compelling HBS to bargain with the union, to compensate aggrieved employees with backpay, and to remit delinquent payments to the union Funds. In 1991, this court enforced the Board's Decision and Order. *See Houston Bldg. Service, Inc. v. NLRB*, 936 F.2d 178 (5th Cir. 1991) (HBS II).[3] Later on appeal, the Supreme Court denied HBS' writ of certiorari.[4]

A dispute subsequently arose over the calculation of back pay and benefits owed under the Board's Decision and Order. The dispute was heard before ALJ Christensen, who then issued a Supplemental Decision. The Board affirmed and issued its Order on May 1, 1996. It is from that Order which the Board now seeks enforcement.

## DISCUSSION

At the outset, HBS has not disputed the Board's Order regarding the amount of back pay due to the aggrieved parties. As such, HBS has waived any defense to this part of the Board's Order. *Texas World Service Co. v. NLRB*, 928 F.2d 1426, 1438 (5th Cir. 1991). Thus, we grant the Board's application for enforcement of this part of its Order. The focus of our discussion is therefore limited to whether the Act precludes HBS from making payments to the Fund. HBS argues that because it did not have a CBA with the Union, Section 302 of the Act, 29 U.S.C. § 186 (Section

---

[3]By enforcing the Board's Decision and Order, the Board's choice of remedy—encompassed within the ruling—was also enforced.

[4]Reported at 112 S.Ct. 1159 (1992).

3

302), prohibited it from making any payments into the Fund, thus, it did not commit a ULP when it refused to make payments to the Fund. The NLRB asserts that HBS is precluded from raising this argument because it failed to raise it when it went before the Board. After careful consideration, we agree with the NLRB and hold that HBS is procedurally barred from raising its claim here.

**I. Procedural Bar.**

HBS' efforts in trying to convince this court that the Board's Order ordering it to make payments to the Fund are violative of the Act are unavailing. Generally, we have held that, absent extraordinary circumstances, the failure to raise an argument before the Board renders us without jurisdiction to consider that argument. *Local Union 60 v. NLRB*, 941 F.2d 1326, 1336 (5th Cir. 1991). This rule is "mandatory, not discretionary." *Oldwick Materials, Inc. v. NLRB*, 732 F.2d 39, 341 (3d Cir. 1984). Here, HBS failed to raise the issue of the Board's remedy violating Section 302 at any point prior to the instant action. As such, HBS is foreclosed from raising this defense for the first time here. *See NLRB v. Catalytic Indus. Maintenance Co.*, 964 F.2d 513, 521 (5th Cir. 1992) (holding that because employer failed to invoke the defense employer then relied upon when the case was before the Board, the employer was foreclosed from raising it for the first time on appeal). Accordingly, we reject this argument.

**II. Substantively Meritless**.

Even though we are satisfied that HBS cannot overcome the procedural default of this claim, we will nevertheless briefly discuss its argument on the merits. As we stated, HBS argues that Section 302 prohibited it from making payments to the Fund, therefore, it did not commit a ULP by refusing to remit payments to the Fund.

Section 302 prohibits contributions to a trust fund absent a written agreement.[5] This restriction is in place to "insure that employer contributions are only for a proper purpose and to insure that the benefits from the established fund reach only the proper parties." *Moglia v. Geoghegan*, 403 F.2d 110, 116 (2nd Cir. 1968). On this basis, HBS argues that the Board's make-whole remedy "offends the policies of Section 302." In addition, HBS contends that the absence of a written agreement "subjugates" an essential policy of freedom of contract. We are unpersuaded by either of these contentions.

A. The Board's Remedy Does Not Offend the Policies of Section 302.

The Board is charged with fashioning remedies which effectuate the policies of the Act. *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 898-99 (1984). The Board's choice of remedies is subject to limited judicial review. *Id.* Moreover, the Board's make-whole Order in the instant case is in line with its traditional remedial powers because it seeks to "restor[e] the economic status quo that would have [been] obtained but for the [employer's] wrongful [conduct]." *NLRB v. J.H. Rutter-Rex MFG. Co.*, 396 U.S. 258, 263 (1969). Within the Board's Order, the Board pronounced a make whole remedy which included an Order to HBS to cease and desist from "unilaterally refusing to make

---

[5]Section 302 states in pertinent part:
> (a) It shall be unlawful for any employer . . . to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value (1) to any representative of any of his employees who are employed in an industry affecting commerce.
>
> \* \* \* \*
>
> (c) The provisions of this section shall not be applicable (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents . . . **provided that . . . (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer. . . .**

29 U.S.C. § 186(a) & (c)(5)(B) (Section 302) (emphasis added).

5

payments to the employee pension fund, annual benefit fund, and health and welfare funds." *See HBS I,* 296 NLRB 101, __.

Here, Housekeepers' CBA with the Union called for it to remit payments to the Fund. Because HBS is the successor employer[6] to Housekeepers, it maintained a relationship with the Union as a result of that agreement.[7] In *HBS* II, it was established that HBS' failure to initiate its own terms and conditions of employment and its act of hiring all of Housekeepers' employees, "did nothing to combat the impression that any reasonable employee would have . . . that the 'new' job merely was a continuation of the old." *HBS* II, 936 F.2d at 180. Thus, at that point, HBS was precluded from unilaterally changing the terms and conditions of employment without bargaining with the union. HBS' refusal to remit payments to the Fund was therefore a violation of the Act.

The Board's remedial power to order HBS to "make whole" the aggrieved employees is entitled to enforcement "unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Virginia Elec. & Power Co. v. NLRB*, 319 U.S. 533, 540 (1943). When Section 302 is viewed against this backdrop,

---

[6]This issue was resolved by this court in HBS I, thus, relitigation of this issue is foreclosed by the law of the case doctrine. The law of the case doctrine generally precludes the reexamination of issues decided on appeal, either by the district court on remand or by the appellate court itself on subsequent appeal. *Chevron U.S.A. v. Traillour Oil Co.*, 987 F.2d 1138, 1150 (5th Cir. 1993).

[7]Generally, a successor employer is not bound by its predecessor's CBA. However, certain rules govern an employer's successorship. When a successor employer takes over for its predecessor it has certain recognized rights and duties. The employer can institute its own initial terms and conditions of employment by giving the employees prior notice of its intention. *NLRB v. Burns Int'l Security Serv.*, 406 U.S. 272, 294 (1972). If not, and the employer holds itself as if it will adhere to the terms of the previous CBA, then in order for the employer to change terms of that agreement, it must bargain for those changes. *Spruce-Up Corp.*, 209 NLRB 194, 195 (1974), *enforced without op.*, 529 F.2d 516 (4th Cir. 1975). Moreover, any unilateral changes to the predecessor's CBA may take place only after bargaining to an impasse. *NLRB v. Edjo, Inc.*, 631 F.2d 604, 606-608 (9th Cir. 1980). Failure to negotiate or negotiate to an impasse will result in a violation of § 8(a)(5) of the Act.

it is clear that the Board's remedy passes muster. Section 302 addresses the threat of foul play permeating an undocumented payment, rather than the type of remedy the Board fashioned here. *See Arroyo v. United States*, 359 U.S. 419, 425-26 (1959) (discussing that the policy behind Section 302 was to address the concerns of corruption of collective bargaining through bribery of employee representatives by employers). In short, the Board's make-whole remedy was fashioned to insure the payment of monetary benefits into the Fund to return the employees to the status quo. This cannot be said to offend the policies behind Section 302. We therefore reject this argument.

B. The Board's Remedy Does not Impede HBS' Freedom of Contract.

HBS next argues that the Board's Order "subjugates" the basic tenet of freedom of contract. It opines that the Board's Order "attempts to create an implied contract between the parties who have agreed on nothing under the premise that it makes the affected employees whole." We disagree. The Board's Order does not offend the notion of freedom of contract; indeed, the Board's Order balances HBS' freedom of contract with its remedial power to restore the status quo.

In HBS I, the Board found—and this court later upheld—that by HBS failing to exercise its right as a successor employer to implement its own initial terms and conditions of employment for its employees, the terms and conditions embodied in Housekeepers' contract with the Union became the employees' initial terms and conditions of employment when HBS took over. Although the terms of Housekeepers' CBA were not binding on HBS, it was required to first bargain with the Union to an impasse before unilaterally changing those terms and conditions of employment. *NLRB v. Edjo, Inc.*, 631 F.2d 604, 606-08 (9th Cir. 1980). Thus, the Board's Order implicitly recognized HBS' right to depart from the terms of Housekeepers' CBA. The Board's make whole remedy, however, stems from HBS' failure to bargain to an impasse before it refused to make payments to the Fund.

7

This omission, preceded by HBS' failure to implement its own initial terms thus giving employees the appearance that they would be covered by the Housekeeper CBA, was a clear violation of § 8(a)(5) of the Act. HBS cannot now come before us with unclean hands and say the Board interfered with its freedom to contract.

In sum, much of HBS' argument "is of [its] own making." *See HBS* II, 936 F.2d at 180. It was HBS' failure to adhere to its duties as a successor employer, which caused it to lose its right to unilaterally depart from its predecessor's contract. We therefore reject HBS' second contention. Accordingly, we hold that HBS' argument is both procedurally barred and, in any event, substantively meritless.

## CONCLUSION

For the foregoing reasons, we GRANT the Board's Application for Enforcement of its Order.