**Bernard ANDERSON, Plaintiff,**

v.

**Bill RICHARDSON, Secretary, United States Department of Energy Defendant.**

**No. A3–99–103.**

United States District Court, D. North Dakota, Southeastern Division.

May 30, 2001.

Deborah Joan Carpenter, Carpenter Offices, Bismarck, ND, for plaintiff.

David L. Peterson, U.S. Attorney's Office, Bismarck, ND, for defendant.

## MEMORANDUM AND ORDER

WEBB, Chief Judge.

### I. Introduction

Before the Court are defendant's renewed motion for judgment as a matter of law and plaintiff's application for attorney's fees, costs, and damages (doc.'s # 45,

43). Each party opposes the other's motion (doc. # 47, 48). For the reasons set forth below, defendant's renewed motion for judgment as a matter of law is **DENIED**. Plaintiff's application for fees, costs and damages is **DENIED IN PART AND GRANTED IN PART**, as set forth in detail below.

## II. Defendant's renewed motion for judgment as a matter of law

At the close of evidence, defendant moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. That rule provides that a court may grant such a motion when "there is no legally sufficient evidentiary basis for a reasonable jury to find for a party" on an issue. At trial, the Court concluded plaintiff had met his burden of presenting sufficient evidence to allow a verdict in his favor, denied the motion, and submitted the case to the jury. The jury then returned a verdict finding defendant discriminated against plaintiff but finding there had been no damages.

Defendant has now renewed the motion pursuant to Rule 50(b). That rule provides that when, as here, a verdict was returned, the court may allow the judgment to stand or direct entry of judgment as a matter of law. The rule also allows the court to order a new trial, but since neither party has requested this, the Court will not consider it here.

The Eighth Circuit recently set forth the standards for evaluating renewed motions for judgment as a matter of law:

We review a district court's denial of a judgment as a matter of law de novo, applying the same standard as that employed by the district court. We resolve all doubts in favor of the non-moving party and give that party the benefit of all reasonable inferences. "Judgment as a matter of law is appropriate only when all of the evidence points one way and is 'susceptible of no reasonable inference sustaining the position of the nonmoving party.' " Post-verdict judgment as a matter of law is appropriate only where the evidence is entirely insufficient to support the verdict.

*Belk v. City of Eldon,* 228 F.3d 872, 878 (8th Cir.2000).

■ As these rules make clear, undoing a jury verdict is a very difficult task: "Because the law places a high standard on overturning a jury verdict, JAML is proper only when there is a complete absence of probative facts to support the conclusion reached so that no reasonable juror could have found for the nonmoving party." *Ogden v. Wax Works, Inc.,* 214 F.3d 999, 1006–07 (8th Cir.2000) (quoting *Blackmon v. Pinkerton Sec. & Investigative Serv.,* 182 F.3d 629 (8th Cir.1999)). Thus, "[a] jury verdict should not be overturned unless there is a complete absence of facts to allow the jury to reach its conclusion." *Athey v. Farmers Ins. Exchange,* 234 F.3d 357, 363 (8th Cir.2000). Defendant cannot meet this burden here.

■ The main basis for defendant's motion is an inference that the jury improperly considered certain evidence, based on a question the jury asked the Court during its deliberations. The question by the jury was as follows: "Is retribution by a first line supervisor enough to determine defendant's unlawful retaliation against plaintiff?" After consulting with the parties, the Court, as defendant's motion explains, responded to the jury that it should refer to the Court's previous instructions. The jury then returned the verdict discussed above.

Defendant's essential argument is that any actions by "first line supervisors" could not, as a matter of law, be retaliation, since these supervisors had no authority to suspend plaintiff. It then identifies several actions by supervisors

in evidence at the trial—most notably reporting plaintiff's alleged misconduct to others—which it argues cannot be retaliation. In short, defendant attacks both the factual and legal sufficiency of the evidence which might suggest various "front line supervisors" retaliated against the plaintiff, based on the jury's question.

The fundamental problem with this argument, however, is that it requires the Court speculate about the jury's motivations from the question it asked. The Court is unwilling to do this, as it ignores the standards for such motions set out above. As another district court has explained, "In deciding a postjudgment motion for judgment as a matter of law under Fed.R.Civ.P. 50(b), a court is not to speculate into the particular thought processes of jurors; rather the court's inquiry is limited to determining whether no reasonable jury could have made the challenged finding in light of the evidence presented to the jury." *Sign–A–Way, Inc. v. Mechtronics Corp.,* 12 F.Supp.2d, 132, 151 (D.Mass.1998). Thus, the Court must ask if a reasonable jury could have decided as this one did, not whether this jury made its decision in the right way or for the right reasons.

This is in keeping with the traditional treatment of jury deliberations. Neither the Court, nor the parties, nor anyone other than the jury, knows or will ever know the precise details of the deliberations, including why the jury chose to ask the question it did and how it used the answer. Thus, for example, Federal Rule of Evidence 606(b) prevents jurors, when a verdict is challenged, from testifying to "any matter or statement occurring during the course of the jury's deliberations." This protection of the secrecy of jury deliberations is well established, and prevents this or any court from speculating as to a jury's rationale. *See generally Tanner v. United States,* 483 U.S. 107, 107

S.Ct. 2739, 97 L.Ed.2d 90 (1987) (discussing jury secrecy in the context of jury misconduct). This reinforces the Court's conclusion that it cannot base any decision at this stage on speculation into how or why the jury decided the case, but rather must simply conclude whether a reasonable jury could have concluded as this one did.

The Court is thus left with the same evidence it had when it denied the initial motion. At that time, the Court concluded plaintiff had put forth sufficient evidence of retaliation to allow a reasonable jury to find on his behalf. The Court's view has not changed. Resolving all doubts in favor of plaintiff and viewing the evidence in the light most favorable to him, as is required on such a motion, the Court concludes a reasonable jury could have concluded as this one did. *See Belk,* 228 F.3d at 878. Though the case could have been decided differently by another jury, the Court is unable to say that "there is a complete absence of probative facts to support the conclusion reached[.]" *Ogden,* 214 F.3d at 1006–07. Therefore, based on the discussion thus far, the Court will not change its earlier ruling.

Defendant also argues that the jury should not have been allowed to consider any testimony regarding two prior suspensions of plaintiff, and that testimony regarding plaintiff's filing of "5400" safety reports was inappropriate, since filing them is not a protected activity under the Rehabilitation Act. It is not clear to the Court what these arguments mean. To the extent defendant suggests that the jury improperly relied on the 5400's when it inferred that the first line supervisors were the ones who discriminated—as defendant argues above—the Court has already addressed this argument, and will not do so again. To the extent that defendant argues the 5400's were improperly

admitted, the Court ruled at trial that they were admissible for background and context.[1] Therefore, these arguments do not persuade the Court to change its original ruling, and the renewed motion for judgment as a matter of law is **DENIED.**

## III. Plaintiff's application for fees, costs, and damages

Plaintiff's petition is frankly difficult to understand, consisting of a handwritten sheet of numbers and a set of billing records with items redacted. Defendant challenges the application on several grounds, and the Court is mindful of these objections. Therefore, the Court will address the motion in several parts.

### 1. Specific damage elements

Before addressing the various bases for any sort of award, the Court pauses to address several specific damage elements plaintiff has asserted. First, plaintiff asserts that he used "800 hours of sick and annual leave which he would not otherwise had [sic] to use if not for the stress and medical repercussions of the unlawful discrimination." He asks for this time to be returned to him or, failing that, paid as a monetary sum. Defendant strenuously resists this request, pointing out that this Court eliminated it at the summary judgment stage.

The Court agrees with defendant. The Court's summary judgment order (doc. # 26) concluded that there was "no substantiation in the record for this claim beyond plaintiff's bare allegation" and "the record before the Court contains no basis for this claim." The Court thus granted summary judgment as to it, cutting it out of the case. Plaintiff may not now revive this damage element, and his efforts to do so are **DENIED.**

■ Plaintiff also raises punitive damages, which defendant strenuously resists. At trial, the Court denied plaintiff's request for a punitive damages instruction. It did so with good reason; 42 U.S.C. § 1981a(b)(1) specifically precludes an award of punitive damages against "a government, government agency or political subdivision." Defendant here is a government agency. Therefore, plaintiff may not recover punitive damages, and his effort to do so is **DENIED.**

### 2. Fees and costs under Equal Access to Justice Act (28 U.S.C. § 2412) and Civil Rights Act (42 U.S.C. § 1988)

Plaintiff has moved for fees and costs under the Equal Access to Justice Act (EAJA) (28 U.S.C. § 2412) and the Civil Rights Act attorney's fees provisions (42 U.S.C. § 1988). As the Sixth Circuit has explained, these two statutes effectively work together: "42 U.S.C. § 1988 ... provides for fee awards to plaintiffs who are prevailing parties in suits brought under various civil rights statutes ... [and] Section 1988 is made applicable to federal officials through the Equal Access to Justice Act (EAJA) ...." *Strickland on Behalf of Strickland v. Shalala,* 123 F.3d 863, 866 (6th Cir.1997). Therefore, though the motion cites two statutes, the issue conflates into one inquiry.[2]

Both statutes provide that only a "prevailing party" may recover fees and costs. Not surprisingly, there has been much liti-

---

1. The Court notes that defendant does not appear to be arguing that the admission of the 5400's in and of itself would justify granting its motion, so the Court will not dwell on this issue.

2. Plaintiff also cites several other statutes, such as the whistleblower statute, which have no bearing on this case. The Court will not address any of these statutes except to make clear that plaintiff has provided no basis for this Court to apply them.

gation concerning precisely what it means to be a "prevailing party," especially in cases such as this one, in which the plaintiff receives a finding of liability but no or nominal damages. Citing these cases, the government argues plaintiff cannot qualify as a prevailing party and thus cannot, as a matter of law, recover fees or costs under either statutes. The Court, for the reasons which follow, disagrees with the government's position, although it concludes that a grant of fees is inappropriate under these circumstances.

### A. Plaintiff is a prevailing party

■ First, the Court's view is that plaintiff is a prevailing party. In *Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), the Supreme Court held that a plaintiff who recovers even nominal damages can be a prevailing party, because the key to such status is "an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." The Court reasoned that even an award of nominal damages accomplishes this goal, since plaintiff may demand payment of such an award no less than he may demand payment of a multimillion dollar judgment. *Id.* at 113, 113 S.Ct. 566. Thus, plaintiff must have something enforceable as the result of litigation, even if it is a small amount, to be a prevailing party.

Here, the jury found defendant discriminated against plaintiff but found no damages of any kind. The Court notes that plaintiff did not request an instruction on nominal damages (doc. #33), nor did he object to the Court's instructions on that grounds. Thus, as a direct result of the jury verdict alone, plaintiff has nothing to enforce as a result of judgment; he has merely the "moral satisfaction [that] results from any favorable statement of law," which the Supreme Court has held "cannot bestow prevailing party status." *Id.* at 112, 113 S.Ct. 566. Therefore, plaintiff cannot enjoy prevailing party status on this basis alone.

However, legal damages awarded by the jury are not the only measure of plaintiff's recovery in this case. The Rehabilitation Act makes available to plaintiffs the remedies authorized by Title VII. 29 U.S.C. § 794a(a)(1). Title VII provides in part that a court may order "affirmative relief," which may include awards of back pay. 42 U.S.C. § 2000e–5(g). Whether to award back pay is an equitable remedy and thus a question for the court, not a jury. *See Pedigo v. P.A.M. Transport,* 60 F.3d 1300, 1303 (8th Cir.1995). Thus, the Court's instructions to the jury specifically precluded them from considering back pay, and the verdict did not reflect this issue.

For reasons set forth below and not repeated here, the Court in this case grants plaintiff backpay for the ten days he was suspended. Thus, he will have an enforceable judgment—however small—and is thus in at least as good a position as a plaintiff who receives a nominal damages award, which *Farrar* indicates makes one a prevailing party.[3] *See* 506 U.S. at 111, 113 S.Ct. 566. Therefore, the Court concludes that plaintiff is a prevailing party who may receive an award of fees and costs. The next question is whether to grant such an award under the circumstances of this case.

---

**3.** It is this fact that distinguishes this case from cases such as *Robinson v. City of St. Charles, Missouri,* 972 F.2d 974, 976 (8th Cir.1992), cited by the government, which suggest a finding of liability without damages

prevents one from being a prevailing party. In those cases, the plaintiff had not sought any equitable damages, and so a rejection of legal damages finished the issue; here, plaintiff has sought and can recover equitable damages.

### B. Plaintiff is not entitled to an award of fees and costs

■ While being a prevailing party is the initial requirement for a fee award, this status does not automatically require an award. As the Supreme Court made clear in *Farrar*, a party deemed to be prevailing because of a technical determination, such as a plaintiff who wins nominal damages, still must have any potential award evaluated in light of the degree of success obtained in the litigation overall. *Farrar*, 506 U.S. at 114, 113 S.Ct. 566; *see also Burks v. Siemens Energy & Automation, Inc.*, 215 F.3d 880, 882–83 (8th Cir. 2000) (citing and discussing *Farrar*). Here, the Court concludes, in its discretion, that any award would be inappropriate in light of the degree of success obtained through litigation. *See Kline v. City of Kansas City, Missouri, Fire Dept.*, 245 F.3d 707, 708 (8th Cir.2001) (noting that a fee award is within the discretion of the trial court and is reviewed for abuse of discretion).

As *Farrar* makes clear, the focus of the inquiry into awarding fees is the degree of success obtained, and the prevailing party inquiry is merely a threshold requirement. Thus, "[i]n some circumstances, even a plaintiff who formally 'prevails' . . . should receive no attorney's fees at all." *Id.* at 115, 113 S.Ct. 566. This is because not receiving damages from the jury indicates a "failure to prove an essential element of [plaintiff's] claim for monetary relief." *Id.* Thus, the original claim was flawed in several serious ways, which prevented the jury from finding more emphatically as plaintiff wished. This fact weakens plaintiff's claim to an award of fees and costs, even though he technically prevailed.

Further, The Eighth Circuit has held that, when evaluating a plaintiff's success, a court should consider the success of the case overall. *See generally Wal–Mart Stores, Inc. v. Barton*, 223 F.3d 770, 772 (8th Cir.2000) ("Where a plaintiff has achieved only limited or partial success, the court must consider in its award 'whether the expenditure of counsel's time was reasonable in relation to the success achieved' "). Therefore, the Court here is mindful that, though plaintiff technically prevailed because he will recover backpay, he originally sought much more, which the Court and the jury denied him. This fact further undercuts any potential fee award.

Applying these principles to the case at bar shows a fee award is inappropriate. Plaintiff simply enjoyed very limited success, especially in light of his original suit. As mentioned above, the Court entered a summary judgment order in this case, in which it eliminated virtually all of plaintiff's claims (doc. # 26). This order denied all substantive ADA/Rehabilitation Act claims; rejected an attempt to use explicit Title VII theories of recovery; and eliminated several specific elements of damages. Thus, before trial, the case was reduced to a retaliation claim, representing only a small portion of the original suit. Plaintiff clearly did not prevail on the vast majority of his claim, a fact which undercuts an award of fees and costs in his favor. *See Wal–Mart Stores*, 223 F.3d at 772.

Then, at trial on the remaining claim, the jury found liability but declined to award any damages. Thus, having first lost on most of his claims altogether, plaintiff managed only a minor and technical victory on his one remaining claim. This undercuts any sense that plaintiff enjoyed the kind of success that would justify an award of fees and costs. *See Farrar*, 506 U.S. at 115, 113 S.Ct. 566 (holding that a plaintiff who obtains only nominal damages is generally not entitled to a fee award). Therefore, the motion for fees and costs is

denied, on the grounds that it is not justified by plaintiff's narrow success.[4]

### 3. Equitable damage remedies

■ Plaintiff argues that he "lost wages on three separate occasions for the 'disciplinary' suspensions imposed on him after his protected activity," and he seeks to recover these wages as back pay. Defendant resists this effort on several grounds. As set forth below, the Court holds that plaintiff is entitled to receive backpay for the 10–day 1997 suspension.

Initially, defendant stresses the only suspension at issue is the 1997 10–day suspension, not the other two suspensions to which plaintiff's demand alludes. The Court agrees. Plaintiff's complaint specifically demands back pay in the amount of $1,676.80 for 8 days—equal to the number of work days he was suspended (two of the ten days were apparently served on the weekend). Additionally, the only suspension as to which the complaint established that plaintiff exhausted his administrative remedies was the 1997 10–day suspension. Therefore, the Court's analysis will be limited to that suspension.

The case ultimately tried to the jury was for retaliation in violation of the Rehabilitation Act. The Rehabilitation Act makes available to plaintiffs the remedies authorized by Title VII. 29 U.S.C. § 794a(a)(1). Title VII provides in part that a court may order "affirmative relief," which may include awards of back pay. 42 U.S.C. § 2000e–5(g). Whether to award back pay is an equitable remedy and thus a question for the court, not a jury. See Pedigo v. P.A.M. Transport, 60 F.3d 1300, 1303 (8th Cir.1995). Thus, the Court's instructions to the jury specifically precluded them from considering back pay, and the verdict did not reflect any arguments or evidence regarding this issue.

Defendant argues, however, that the jury's finding that defendant's retaliation caused plaintiff no damages forecloses an equitable backpay award by the Court. For support, defendant cites cases in which an action for equitable relief and an action for legal damages are tried together, one to the judge and the other to the jury. See Lincoln v. Board of Regents of University System of Georgia, 697 F.2d 928, 934 (11th Cir.1983); see also Ways v. City of Lincoln, 871 F.2d 750, 755 (8th Cir.1989). In such cases, it is generally agreed that a court cannot issue equitable relief inconsistent with the jury's determination. See Lincoln, 697 F.2d at 934. Defendant argues these cases control the issue before the Court and preclude an equitable award.

However, these cases do not reach the heart of the issue before the Court. Here, the jury was not permitted to consider backpay. Its finding that defendant caused plaintiff no damage was based on a conclusion that defendant caused plaintiff no damage of a kind it was able to compensate: emotional damages, medical expenses, etc. Therefore, defendant reads too broadly the cases preventing a judge from finding contrary to a jury; an award of backpay would not inconsistent, since the jury never had that question before it.

It is the Court's view, rather, that the jury's finding that defendant retaliated against plaintiff justifies an award of backpay. Since the only adverse employment action at issue was the 1997 10–day suspension, the jury's finding that defendant retaliated against plaintiff justifies an award of backpay for that suspension. Therefore, the Court **ORDERS** that defendant pay plaintiff an amount equal to what he would have earned had he not been suspended, plus interest at the North

---

4. The Court has concluded that no award is appropriate, and it therefore will not address defendant's objections to specific elements of the fees sought.

Dakota legal rate of 6%, minus any taxes or other deductions usually taken from his paychecks.[5] In other words, defendant is to put plaintiff in the financial position he would have enjoyed had he not been suspended, insofar as the money lost during his suspension.

## IV. Conclusion

In conclusion, defendant's renewed motion for judgment as a matter of law is **DENIED** (doc. # 45). Plaintiff's application for fees, costs, and damages is **GRANTED IN PART AND DENIED IN PART.**

IT IS SO ORDERED.

---

5. North Dakota's legal interest rate of 6% is set forth at N.D. Cent.Code § 47–14–05. Title VII, the remedies provisions of which control remedies under the Rehabilitation Act, allows for prejudgment interest. 42 U.S.C. § 2000e–16(d); *see also Arneson v. Callahan,* 128 F.3d 1243, 1245 (8th Cir.1997).