SIGN–A–WAY, INC., Plaintiff,

v.

MECHTRONICS CORPORATION,
Defendant.

No. Civ.A. 96–10705–REK.

United States District Court,
D. Massachusetts.

May 29, 1998.

Cornelius J. Moynihan, Jr., David H. Gibbs, Christopher R. Goddu, Nicholas G. Papastavros, Peabody & Brown, Boston, MA, for Sign–A–Way, Inc.

Mark A. Berthiaume, Daniel H. Conroy, Goldstein & Manello, P.C., Boston, MA, for Mechtronics Corporation.

## Opinion

KEETON, District Judge.

### I. Procedural Summary

After extensive pretrial hearings and rulings, which reduced to some extent the scope of the issues foe trial, this case proceeded through jury trial commencing on March 16, 1998 and concluding with a Verdict on April 3, 1998. On April 8, 1998, the court held hearings regarding the form of the judgment, and ordered judgment for declaratory relief and monetary damages as found by the jury.

Now before the court are the following post-verdict motions:

(1) Mechtronics Corporation's Post–Verdict Motion for Judgment as a Matter of Law or, Alternatively, to Alter or Amend the Judgment (Docket No. 113, filed April 22, 1998), with supporting submissions (Docket Nos. 114, 115). Sign–A–Way's opposing positions are set forth in its post-verdict motions and submissions identified in the next paragraph below.

(2) Sign–A–Way's Renewed Motion for Judgment as a Matter of Law and Motion to Alter or Amend the Judgment (Docket No. 117, filed April 23, 1998) and Sign–A–Way's Alternative Motion for Setoff of Judgments (Docket No. 116), with supporting submission (Docket No. 118). Mechtronics filed an opposition (Docket No. 121, filed May 7, 1998).

The intertwined legal and factual complexities of this case made it infeasible to try the case to general verdict. Instead, the court submitted only special questions to the jury under Rule 49(a) of the Federal Rules of Civil Procedure. The judgment of April 8, 1998, awarding some relief to each party and rejecting other contentions of each party, recites each of the answers of the jury that the court concluded on April 8 were relevant to terms of the judgment.

For the reasons explained in Parts IV—V of this opinion, I conclude that the Judgment of April 8 awarding damages to Mechtronics on its counterclaim must be vacated, and an Amended Judgment making a lower award on the counterclaim will be ordered.

As background for explaining the court's rulings on the post-verdict motions now pending, Part II of this opinion recites the terms of the Judgment of April 8, 1998, including quoted portions of the verdict.

### II. The Judgment of April 8, 1998

The entire terms of the judgment, excluding only the caption, were as follows:

Plaintiff's Amended and Restated Complaint sought injunctive relief, declaratory relief, compensatory damages, punitive damages, attorneys fees, and an accounting of defendant's use of plaintiff's alleged "invention." After court rulings in pretrial proceedings, plaintiff's numerous theories of claim remaining at the beginning of trial proceedings included a federal law claim of violation of the Lanham Act for false or misleading advertisement and promotion; Massachusetts state-law claims of breach of contract, misappropriation of trade secrets, unjust enrichment, conversion, interference with advantageous relations, damage to reputation, and fraud; and claims under the law of Connecticut of unfair competition and violation of the Connecticut Unfair Trade Practices Act.

Defendant, in counterclaims, asserted Massachusetts state-law claims for injunctive relief; "damages, together with interest, costs, and attorneys' fees;" double damages as to

one of the asserted counterclaims; conversion; misappropriation of trade secrets and other proprietary information; and unjust enrichment.

The court submitted to the jury factual issues, by questions under Rule 49(a) of the Federal Rules of Civil Procedure, bearing upon the claims and counterclaims remaining for trial. On April 3, 1998, the jury returned a verdict that, in material part, was as follows:

## I. WHAT WAS KNOWN, SAID, AND DONE AT VARIOUS IDENTIFIED TIMES

### A. Promises of Mechtronics to Keep Disclosures of Donna Stearns Confidential

1. Defendant does not dispute that Christopher Anderson, Vice President of Mechtronics, at the meeting of January 1994, promised to keep confidential all disclosures made by Donna Stearns during that meeting and in their further dealings with each other as to which you have heard evidence in this case.

Did Donna Stearns, acting in reliance on that promise, provide to Mechtronics during or after that meeting one or more of the following?

(1) A mechanical model of a self-leveling sign hanging device?

 _X_ YES \_\_\_\_ NO

(2) A photograph of the self-leveling sign hanging device?

 _X_ YES \_\_\_\_ NO

(3) A patent disclosure statement?

 _X_ YES \_\_\_\_ NO

(4) An explanation as to how the self-leveling sign hanging device functioned?

 _X_ YES \_\_\_\_ NO

(5) Her opinion that there was a marketplace need for self-leveling sign hanging devices?

 _X_ YES \_\_\_\_ NO

2. Defendant does not dispute that, at the January 1994 meeting or later, Donna Stearns disclosed to Mechtronics, either orally, or by presentation of a model, photograph or patent disclosure, a device that consisted of one or more of the following characteristics:

(1) A device to raise and lower a sign from a ceiling.

(2) A device to raise and lower a sign that was self-leveling (i.e., the sign would remain level at all times).

(3) A device for suspending signs containing a sign holder to hold the sign.

(4) A device for suspending signs containing a sign holder where the sign holder's sheaves are spaced equidistantly from their respective ends.

(5) A cord supporting the sign holder.

(6) A drum from which the cord would wind and unwind thereby raising or lowering the sign.

(7) A cord which supports the sign holder that runs from a fixed point on the ceiling to a drum.

(8) A device for suspending signs containing a sign holder where the distance between the sign holder's sheaves and the cord-attaching unit and drum are the same.

(9) Two pulleys attached to the sign holder through which the cord runs.

Did Donna Stearns also disclose to Mechtronics, either orally or by a presentation of a model, photograph, or patent disclosure:

(10) A motorized means to turn the drum and thereby wind and unwind the cord to raise and lower the sign?

 _X_ YES \_\_\_\_ NO

(11) A remote control device to activate the motor to turn the drum, thereby winding and unwinding the cord to raise and lower the sign?

 _X_ YES \_\_\_\_ NO

### B. Intent of Mechtronics and Reliance by Donna Stearns

Defendant does not dispute

(1) that Mechtronics promised, in the letter dated February 7, 1994, to keep confidential the disclosures to Mechtronics that were made by Donna

*Stearns, before and after as well as on February 7, 1994, and*

*(2) that an ordinarily prudent person in Donna Stearns' circumstances would have relied upon that promise.*

*3(a). Did Donna Stearns rely on that promise?*

 __X__ YES _____ NO

*If YES to 3(a), go to 3(b) –(d). Otherwise, skip 3(b) –(d).*

*3(b). Do you find that a representative of Mechtronics, at the time of making such a promise to Donna Stearns, did not then intend and expect that Mechtronics would keep that promise?*

 *(1) Oral promise by Christopher Anderson?*

 _____ *We find by a preponderance of the evidence that plaintiff has met its burden of proving that Anderson did not then intend and expect that Mechtronics would keep the promise*

 __X__ *We find that plaintiff failed to meet its burden*

 *(2) Oral promise by Richard Fellinger?*

 _____ *We find by a preponderance of the evidence that plaintiff has met its burden of proving that Fellinger did not then intend and expect that Mechtronics would keep the promise*

 __X__ *We find that plaintiff failed to meet its burden*

 *(3) Promise in the February 7, 1994 Letter?*

 _____ *We find by a preponderance of the evidence that plaintiff has met its burden of proving that Fellinger, at the time of signing the letter, did not then intend and expect that Mechtronics would keep the promise*

 __X__ *We find that plaintiff failed to meet its burden·*

*3(c). At a later time (after the promise was made) did a representative of Mechtronics decide that Mechtronics did not at that later time then intend and expect that Mechtronics would keep the promise?*

 _____ *We find by a preponderance of the evidence that plaintiff has met its burden of proving that at a later time a representative of Mechtronics then intended that Mechtronics would not keep the promise*

 _____ *We find by a preponderance of the evidence that plaintiff has met its burden of proving that at a later time a representative of Mechtronics then expected that Mechtronics would not keep the promise*

 __X__ *We find that plaintiff failed to meet its burden*

*3(d). Did any person acting for Mechtronics tell Donna Stearns, at either the January or the February/March 1994 meeting, that Mechtronics did not intend to keep confidential the disclosures she made?*

 *(1) As to Christopher Anderson?*

 __X__ *We find by a preponderance of the evidence that plaintiff has met its burden of proving that Anderson did not tell Donna Stearns that Mechtronics did not intend to keep confidential the disclosures she made*

 _____ *We find that plaintiff failed to meet its burden*

 *(2) As to Richard Fellinger?*

 __X__ *We find by a preponderance of the evidence that plaintiff has met its burden of proving that Fellinger did not tell Donna Stearns that Mechtronics did not intend to keep confidential the disclosures she made*

 _____ *We find that plaintiff failed to meet its burden*

 *(3) As to any other person?*

 __X__ *We find by a preponderance of the evidence that plaintiff has met its burden of proving that no other person acting for Mechtronics told Donna Stearns that Mechtronics did not intend to keep confidential the disclosures she made*

 _____ *We find that plaintiff failed to meet its burden*

## C. Compliance or Breach

*4(a). Did Mechtronics, without the manifested consent (express or implied in fact) of Donna Stearns, reveal to at least one other person, or entity, material information contained in one or more of the disclosures by*

Donna Stearns to Mechtronics regarding the Self–Leveling Sign Hanging Device?

 __X__ YES _____ NO

If YES to 4(a), go to 4(b) –(e). Otherwise, skip 4(b) –(e).

4(b). Did Mechtronics' conduct in revealing material information contained in one or more of the disclosures of Donna Stearns cause harm to Sign–A–Way?

 __X__ YES _____ NO

4(c). To which, if any, of the following did Mechtronics reveal material information contained in one or more of the disclosures by Donna Stearns?

(1) Arthur Torrence

 __X__ YES _____ NO

(2) Cary Cieciuch

 __X__ YES _____ NO

(3) The Patent and Trademark Office in the 1995 application

 __X__ YES _____ NO

(4) The Patent and Trademark Office in the 1996 application

 __X__ YES _____ NO

4(d)(1). After Mechtronics revealed to one or more of the persons or office identified in 4(c), did Donna Stearns learn that Mechtronics had revealed and what Mechtronics had revealed, and to whom?

 __X__ YES _____ NO

If YES to 4(d)(1), go to 4(d)(2) and (3). Otherwise, skip 4(d)(2) and (3).

4(d)(2). Did Donna Stearns manifest consent (express or implied in fact) to what Mechtronics had revealed?

 __X__ YES _____ NO

4(d)(3). Did Donna Stearns know that Mechtronics was taking additional steps to proceed with development of the Self–Leveling Sign Hanging Device?

 __X__ YES _____ NO

4(e). As to the disclosures about the Self–Leveling Sign Hanging Device provided by Donna Stearns to Mechtronics,

(1) were all of them otherwise known to Mechtronics?

_____ YES, we find by a preponderance of the evidence

__X__ NO, we find by a preponderance of the evidence

_____ We find that there is no preponderance of the evidence

(2) were all of them generally known?

_____ YES, we find by a preponderance of the evidence

__X__ NO, we find by a preponderance of the evidence

_____ We find that there is no preponderance of the evidence

(3) were any of them both (i) not previously known to Mechtronics and (ii) useable in the operation of a business or other enterprise?

__X__ YES, we find by a preponderance of the evidence

_____ NO, we find by a preponderance of the evidence

_____ We find that there is no preponderance of the evidence

(4) were any of them both (i) not previously known to Mechtronics and (ii) sufficiently valuable and secret to afford an actual or potential economic advantage over others?

__X__ YES, we find by a preponderance of the evidence

_____ NO, we find by a preponderance of the evidence

_____ We find that there is no preponderance of the evidence

(5) were any of them both (i) not previously known to Mechtronics and (ii) of measurable benefit to Mechtronics?

__X__ YES, we find by a preponderance of the evidence

_____ NO, we find by a preponderance of the evidence

_____ We find that there is no preponderance of the evidence

**D. Trade Secrets**

5. This question concerns care in protecting confidential information about the Self–Leveling Sign Hanging Device.

5(a). Did Donna Stearns violate the standard of due respect for the interests of Mechtronics to protect secrecy and avoid disclosure

to persons and entities other than Mechtronics

of the information about the Self–Leveling Sign Hanging Device that she disclosed to Mechtronics after receiving a promise of confidentiality from Mechtronics?

(1) __X__ We find by a preponderance of the evidence that she made disclosures to persons or entities other than Mechtronics that a reasonable person in her circumstances would not have made

(2) _____ We find by a preponderance of the evidence that any disclosures she made to persons or entities other than Mechtronics were made in circumstances in which a reasonable person would have felt free to make them

(3) _____ We unanimously find no preponderance of the evidence on this matter

If in answering 5(a) you checked 5(a)(1) or 5(a)(3), go to 5(b). Otherwise, skip 5(b).

5(b). Did Donna Stearns' disclosures in violation of the standard of due respect to protect secrecy of confidential information she had disclosed to Mechtronics cause loss to Mechtronics?

__X__ YES _____ NO

### E. Concerning Unjust Enrichment

6(a). Did Mechtronics attempt to use for its own benefit

the disclosures Donna Stearns made to Mechtronics concerning the Self–Leveling Sign Hanging Device

in one or more of the following ways?

(1) In making the 1995 patent application
__X__ YES _____ NO

(2) In making the 1996 patent application
__X__ YES _____ NO

(3) In one or more other ways
__X__ YES _____ NO

If YES to any part of 6(a), go to the corresponding part of 6(b). Otherwise, skip 6(b).

6(b). Did Mechtronics do so without the consent of Donna Stearns (express or implied in fact)?

(1) As to the 1995 patent application

__X__ We find by a preponderance of the evidence that Mechtronics did not have the consent of Donna Stearns
_____ We find by a preponderance of the evidence that Mechtronics did have the consent of Donna Stearns
_____ We unanimously find no preponderance of the evidence on this matter

(3) In one or more of other ways

__X__ We find by a preponderance of the evidence that Mechtronics did not have the consent of Donna Stearns
_____ We find by a preponderance of the evidence that Mechtronics did have the consent of Donna Stearns
_____ We unanimously find no preponderance of the evidence on this matter

7(a). Did Mechtronics understand the benefit of the disclosures made by Donna Stearns to Mechtronics concerning the Self–Leveling Sign Hanging Device?

__X__ We find by a preponderance of the evidence that Mechtronics did understand
_____ We find by a preponderance of the evidence that Mechtronics did not understand
_____ We unanimously find no preponderance of the evidence on this matter

7(b). Did Mechtronics in fact obtain a benefit from the disclosures Donna Stearns made to Mechtronics concerning the Self–Leveling Sign Hanging Device?

__X__ We find by a preponderance of the evidence that Mechtronics in fact did obtain a benefit
_____ We find by a preponderance of the evidence that Mechtronics in fact did not obtain a benefit
_____ We unanimously find no preponderance of the evidence on this matter

### F. Contacts in the Industry

8(a). Did Donna Stearns

(1) have a business relationship or contemplated business relationship of economic benefit with persons or entities in a business in which the Self–Level-

ing Sign Hanging Device would be useful?

 _X_ YES, we find by a preponderance of the evidence

 _____ NO, we find by a preponderance of the evidence

 _____ We find that there is no preponderance of the evidence

(2) advise Mechtronics of those business relationships or contemplated business relationships?

 _X_ YES, we find by a preponderance of the evidence

 _____ NO, we find by a preponderance of the evidence

 _____ We find that there is no preponderance of the evidence

**8(b). Did Mechtronics,**

by application for a patent on a Self–Leveling Sign Hanging Device,

interfere with Donna Stearns' business relationships and contemplated business relationships?

Check in only one of the following five blanks to express your unanimous finding of knowing, reckless, or negligent interference, or your unanimous finding that Sign–A–Way has not met its burden of proving knowing, reckless, or negligent interference.

(1) _____ YES, knowingly, we find by a preponderance of the evidence

(2) _____ YES, recklessly, we find by a preponderance of the evidence

(3) _____ YES, negligently, we find by a preponderance of the evidence

(4) _X_ NO, we find by a preponderance of the evidence

(5) _____ We unanimously find that there is no preponderance of the evidence

**8(c). Did Mechtronics**

in a way or ways other than applying for a patent,

interfere with Ms. Stearns' potential customers of the Self–Leveling Sign Hanging Device?

Check in only one of the following five blanks to express your unanimous finding of knowing, reckless, or negligent interference, or your unanimous finding that

Sign–A–Way has not met its burden of proving knowing or negligent interference.

(1) _X_ YES, knowingly, we find by a preponderance of the evidence

(2) _____ YES, recklessly we find by a preponderance of the evidence

(3) _____ YES, negligently we find by a preponderance of the evidence

(4) _____ NO, we find by a preponderance of the evidence

(5) _____ We unanimously find that there is no preponderance of the evidence

**G. Applications to the Patent Office— 1995 and 1996 (Alleged Promise to Name Donna Stearns as Inventor)**

9(a). Did Mechtronics make a promise to Donna Stearns that you find to be applicable to either or both of the 1995 and 1996 applications, in which part of the promise was that Mechtronics would list her as inventor:

(1) with respect to the 1995 application?

 _X_ YES _____ NO

(2) with respect to the 1996 application?

 _X_ YES _____ NO

If YES to either part of 9(a), go to the same part of 9(b). Otherwise, skip 9(b).

9(b). Did Donna Stearns rely on Mechtronics' promise to list her as inventor,

(1) with respect to the 1995 application?

 _X_ YES _____ NO

If YES to either part of 9(b), go to the same part of 9(d). Otherwise, skip 9(d).

9(c). In the circumstances occupied by Donna Stearns, would an ordinarily prudent person have relied upon the promise to list her as inventor

(1) by Christopher Anderson?

 _X_ YES, we find by a preponderance of the evidence

 _____ NO, we find by a preponderance of the evidence

 _____ We find that there is no preponderance of the evidence

(2) by Richard Fellinger?

 _X_ YES, we find by a preponderance of the evidence

_____ NO, we find by a preponderance of the evidence

_____ We find that there is no preponderance of the evidence

(3) in the February 7, 1994 Letter?

_____ YES, we find by a preponderance of the evidence

__X__ NO, we find by a preponderance of the evidence

_____ We find that there is no preponderance of the evidence

9(d). Did Mechtronics break its promise to list her as inventor,

(1) with respect to the 1995 application?

__X__ YES _____ NO

### H. Standard of Conduct (Mechtronics)

10(a). An administrative regulation, 37 Code of Federal Regulations, § 1.56, entitled "Duty to disclose information material to patentability," prescribes a "duty of candor and good faith in dealing with" the Patent and Trademark Office in submitting an application. Did Mechtronics violate the duty of candor and good faith in dealing with the Patent Office in

(1) making the 1995 application?

__X__ YES _____ NO

(2) making the 1996 application?

__X__ YES _____ NO

If YES to any part of 10(a), go to the corresponding part of 10(b). Otherwise, skip 10(b).

10(b). Was Mechtronics' conduct also a violation of Mechtronics' duty of due respect for interests of Sign–A–Way and Donna Stearns and was that conduct a cause of loss to them?

(1) Was submitting the 1995 application

(i) a violation of duty to Sign–A Way and Donna Stearns?

__X__ YES _____ NO

(ii) a cause of loss to Sign–A–Way and Donna Stearns?

__X__ YES _____ NO

10(c). After Mechtronics made the 1995 application and Donna Stearns learned that Mechtronics had done so and learned about its content, did she manifest consent (express or implied in fact) to Mechtronics hav-ing made that application and to its content?

__X__ YES _____ NO

10(d). After Mechtronics made the 1996 application and Donna Stearns learned that Mechtronics had done so and learned about its content, did she manifest consent (express or implied in fact) to Mechtronics having made that application and to its content?

__X__ YES _____ NO

### I. Mechtronics' Display at Trade Show of 1996

11(a). Was the display of a model of the Self–Leveling Sign Hanging Device by Mechtronics

(1) with the word "patented"

likely to deceive or mislead potential purchasers?

__X__ YES _____ NO

(2) with a sign stating that it was patented

likely to cause confusion among potential purchasers

concerning Sign–A–Way's and Mechtronics' rights and the rights of ownership of the device?

__X__ YES _____ NO

(3) with a sign stating that it was patented

likely to cause confusion among potential purchasers

as to the origin of the sign suspension device?

__X__ YES _____ NO

11(b). Did Mechtronics

(1) make false representations as to the origin of the sign suspension device

__X__ YES _____ NO

If YES to 11(b)(1), answer 11(b)(2). Otherwise, skip 11(b)(2).

### J. Mitigation

12(a). Did Donna Stearns believe before filing this civil action that Mechtronics was attempting to misappropriate the information she had disclosed to Mechtronics?

___X___ YES _____ NO

If YES to 12(a), go to 12(b). Otherwise, skip 12(b).

12(b). Do you find that Donna Stearns had not formed this belief, before she arranged for removal of the model in the Pet Supply store?

(1) ___X___ We find by a preponderance of the evidence that she did not form this belief until later

(2) _____ We find by a preponderance of the evidence that she had formed this belief before she arranged for removal of the model in the Pet Supply store

(3) _____ We unanimously find no preponderance of the evidence

## II. DAMAGES AWARDS, IF ANY, FOR SIGN–A–WAY AGAINST MECHTRONICS

If YES to I.3(a) and I.4(a), answer II.1. Otherwise, skip II.1.

1. This question concerns alleged harm caused. What amount of money, if any, is needed to compensate Sign–A–Way fairly and reasonably for any harm, as defined in the court's Charge,

caused by Mechtronics' revealing information disclosed to it by Donna Stearns. Answer in DOLLARS or NONE.

(a) Revealing to the Patent Office

(1) In the 1995 application

$ _____NONE_____

(2) In the 1996 application

$ _____NONE_____

(b) Revealing to others

(1) Arthur Torrence

$ _____NONE_____

(2) Cary Cieciuch

$ _____NONE_____

If you have answered more than one of the above parts of II.1 with a DOLLAR AMOUNT, go to 1(c). Otherwise, skip 1(c).

If YES to any part of I.6(a), go to the corresponding part of II.2. Otherwise, skip II.2.

2. This question concerns alleged unjust enrichment. What amount of money, if any, is needed to compensate Sign–A Way fairly and reasonably for misappropriation in one or more of the following ways? Answer in DOLLARS or NONE.

2(a). Making a patent application

(1) In making the 1995 application

$ _____NONE_____

(2) In making the 1996 application

$ _____NONE_____

2(b). In one or more other ways

$ _____NONE_____

If you have answered one or more parts of II.2 with a DOLLAR amount, go to 2(c). Otherwise, skip 2(c).

If YES to any part of 8(b), or in answer to 8(b) you checked "we find no preponderance," go to II.3. Otherwise, skip II.3.

3. This question concerns alleged interference with advantageous relationships by making applications to the Patent Office.

3(a). What amount of money, if any, is needed to compensate Sign–A–Way for losing established customers and not gaining new customers, caused by Mechtronics' making application to the Patent Office? Answer in DOLLARS or NONE.

(1) In making the 1995 application

$ _____NONE_____

(2) In making the 1996 application

$ _____NONE_____

If you have answered either part of II.3(a) with a DOLLAR AMOUNT, go to 3(b). Otherwise, skip 3(b).

If YES to any part of 8(c), or in answer to 8(c) you checked "we find no preponderance," go to II.4. Otherwise, skip II.4.

4. This question concerns alleged interference with advantageous relationships in ways other than making applications to the Patent Office.

4(a). What amount of money, if any, is needed to compensate Sign–A–Way for loss of established customers or not gaining new

customers, caused by conduct of Mechtronics other than making applications to the Patent Office? Answer in DOLLARS or NONE.

$ NONE

If you have answered II.4(a) with a DOLLAR AMOUNT, go to 4(b). Otherwise, skip 4(b).

If YES to either part of 1.9(b), go to the corresponding part of II.5. Otherwise, skip II.5.

5(a). What amount of money, if any, is needed to compensate Sign–A–Way fairly and reasonably for harm, if any, that Mechtronics' failure to list her as inventor caused? Answer in DOLLARS or NONE.

(1) With respect to the 1995 application
 $ 200,000.00

(2) With respect to the 1996 application
 $ NONE

If you have answered either part of 5(a) with a DOLLAR amount, go to 5(b). Otherwise, skip 5(b).

If YES to any part of I.10(a) and any part of I.10(b), go to II.6. Otherwise, skip II.6.

6(a). What amount of money, if any, is needed to compensate Sign–A–Way fairly and reasonably for any loss to Sign–A–Way caused by conduct of Mechtronics in violation of a duty to Sign–A–Way and Donna Stearns regarding candor and good faith in dealing with the Patent and Trademark Office? Answer in DOLLARS or NONE.

(1) In making the 1995 application
 $ 200,000.00

(2) In making the 1996 application
 $ NONE

If you have answered either part of II.6(a) with a DOLLAR AMOUNT, go to 6(b). Otherwise, skip 6(b).

6(b). How much, if any, of the amount or amounts you have found is duplicative? Answer in DOLLARS or NONE.

(1) With respect to the amount in 6(a)(1)
 (xi) Duplicative as to
 5(a)(1) $ 200,000.00

If YES to any part of I.11, go to II.7. Otherwise, skip II.7.

7(a). What amount of money, if any, is needed to compensate Sign–A–Way fairly and reasonably for any loss to Sign–A–Way caused by the conduct of Mechtronics in any of the following ways? Answer in DOLLARS or NONE.

(1) In displaying a model of the Self-Leveling Sign Hanging Device

$ NONE

(2) In making a false representation as to the origin of the sign suspension device

$ NONE

If you have answered either part of II.7(a) with a DOLLAR AMOUNT, go to 7(b). Otherwise, skip 7(b).

If you have been directed in Part II to answer any other question in Part II., go to II.8 immediately below. Otherwise, skip II.8.

The court needs your answer to this following question in order to determine what, if any, judgment is to be made with respect to declaratory relief in this case.

8. Do you find by a preponderance of the evidence that it is reasonably certain that Sign–A–Way will suffer economic harm in the future, beyond the date of your verdict, of which any wrongful conduct of Mechtronics you have found in answering other questions in this verdict is a cause?

 X YES _____ NO

9. If you have awarded a sum of money in answer to any question in Part II, answer the corresponding part of this question. Otherwise, skip this question. What, if any, prejudgment interest do you award. Answer in DOLLARS or NONE.

(xi) On the sum awarded in 5(a)(1), $ 20,-000.00 in prejudgment interest

(xiii) On the sum awarded in 6(a)(1), $ 20,-000.00 in prejudgment interest

### III. DISCLOSURES BY MECHTRONICS TO SIGN–A–WAY

1. This question concerns Mechtronics' disclosures to Donna Stearns or Sign–A–Way.

1(a)(1) Did Mechtronics disclose to Donna Stearns or Sign–A–Way the Mechtronics device's micro-chip?

 _X_ YES _____ NO

If YES to 1(a)(1), go to (2)–(6). Otherwise skip (2)–(6).

(2) Was this information otherwise known to Sign–A–Way?

 _X_ YES _____ NO

(3) Was this information generally known?

 _X_ YES _____ NO

(4) Was this information useable in the operation of a business or other enterprise?

 _X_ YES _____ NO

(5) Was this disclosure sufficiently informative beyond general knowledge and valuable, alone or together with other disclosures, to provide Donna Stearns an economic advantage over others in a similar business?

 _X_ YES _____ NO

(6) Did Donna Stearns or Sign–A–Way violate their duty of due respect for the interests of Mechtronics in this information Mechtronics disclosed to Donna Stearns or Sign–A–Way?

 _X_ YES _____ NO

1(b)(1) Did Mechtronics disclose to Donna Stearns or Sign–A–Way Mechtronics' customer lists, contacts, and marketing leads, developed by Mechtronics?

 _X_ YES _____ NO

If YES to 1(b)(1), go to (2)–(6). Otherwise skip (2)–(6).

2. This question concerns Mechtronics' Trade Secrets and Mechtronics' care in protecting confidential information about Mechtronics development of models and designs.

2(a) Did Mechtronics violate the standard of due respect for the interests of Sign–A–Way to protect secrecy and avoid disclosure to persons and entities other than Donna Stearns and Sign–A–Way

of the information about Mechtronics' development of models and designs that Mechtronics disclosed to Donna Stearns or Sign–A–Way

(1) _____ We find by a preponderance of the evidence that Mechtronics made disclosures to persons or entities other than Donna Stearns and Sign–A–Way that a reasonable person in Mechtronics' circumstances would not have made.

(2) _X_ We find by a preponderance of the evidence that any disclosures Mechtronics made to persons or entities other than Donna Stearns and Sign–A–Way were made in circumstances in which a reasonable person would have felt free to make them.

(3) _____ We unanimously find no preponderance of the evidence on this matter.

3(a) Was Donna Stearns' conduct in either of the following ways a violation of her duty of due respect for the interests of Mechtronics?

(1) Was Donna Stearns' conduct in arranging for the removal of the model that was displayed in the Pet Supply Store a violation of her duty of due respect for Mechtronics' property interest in the model?

 _X_ YES _____ NO

(2) Was Donna Stearns' conduct in making the arrangements she made with Selectronics for developing and making a model a violation of her duty of due respect for Mechtronics' interests?

 _X_ YES _____ NO

If YES to either part of 3(a), go to the corresponding part of 3(b). Otherwise skip 3(b).

3(b) Did Donna Stearns' conduct in either of the following ways cause Mechtronics to suffer a loss?

(2) Her conduct in making the arrangements she made with Selectronics for developing and making a model?

__X__ YES ____ NO

## IV. DAMAGES AWARDS, IF ANY, FOR MECHTRONICS AGAINST SIGN–A–WAY

If YES to any of III.1(a)–(d)(1) or III.1(b)(1), go to 1, immediately below. Otherwise, skip 1.

1. This question concerns alleged misappropriation of benefit.

1(a). Did Sign–A–Way use for its own benefit information Mechtronics disclosed to Sign–A–Way about the Self–Leveling Sign Hanging Device without compensating Mechtronics fairly and reasonably for the use?

__X__ YES ____ NO

If YES to 1(a), go to 1(b). Otherwise, skip 1(b).

1(b). What amount of money, if any, is needed to compensate Mechtronics fairly and reasonably for misappropriation? Answer in DOLLARS or NONE.

(1) For use of the Mechtronics' microchip

$ 1,000.00

(2) For use of customer lists, marketing contracts and leads

$ NONE

If you have answered both parts of III.1(b) with a DOLLAR amount, go to 1(c). Otherwise skip 1(c).

1(c). How much, if any, of the amounts you have found is duplicative? Answer in DOLLARS or NONE.

$ NONE

If YES to III.1(a)(6) or III.1(b)(6), go to 2.

2. This question concerns Donna Stearns' or Sign–A–Way's allegedly causing loss to Mechtronics by revealing information Mechtronics disclosed to Donna Stearns or Sign–A–Way.

2(a). What amount of money, if any, is needed to compensate Mechtronics fairly and reasonably for any loss to Mechtronics caused by Donna Stearns or Sign–A–Way by revealing to others in violation of their duty of due respect for the interests of Mechtron-

ics, one or more of the disclosures of Mechtronics to Donna Stearns or Sign–A–Way?

$ NONE

If you have answered IV.2(a) with a DOLLAR amount, answer 2(b). Otherwise skip 2(b).

If YES to either part of III.3(a), to 3, immediately below. Otherwise, skip 3.

3(a)(1). What amount of money, if any, is needed to compensate Mechtronics fairly and reasonably for any loss to Mechtronics caused by Donna Stearns' arranging for removal of the model in the Pet Supply store? Answer in DOLLARS or NONE.

$ NONE

3(a)(2). What amount of money, if any, is needed to compensate Mechtronics fairly and reasonably for any loss to Mechtronics caused by Donna Stearns' making the arrangements she made with Selectronics for developing and making a model? Answer in DOLLARS or NONE.

$ 28,000.00

If you answered either part of 3(a) with a dollar amount, go to 3(b). Otherwise skip 3(b).

3(b). How much, if any, of the amount or amounts you have found is duplicative? Answer in DOLLARS or NONE.

(2) With respect to the amount found in 3(a)(2)

(i) Duplicative as to
 1(b)(1) $ 1,000.00

4. If you have awarded a sum of money in any question in Part IV, answer the corresponding part of this question. Otherwise skip this question.

What, if any, prejudgment interest do you award? Answer in DOLLARS or NONE.

On the sum awarded in 3(a)(2), $ 8,400.00 in prejudgment interest

| | |
|---|---|
| _April 13, 1998_ | X _____ |
| **Date** | **Foreperson** |

On the stipulations, rulings of law, and the foregoing findings of fact by the jury in response to Questions I.(1)–(5), I.2(1)–(11), I.3(a), I.4(a)–(c), I.4(e), I.6, I.7, I.8(c), I.9,

I.10, I.11, and II.4(a), it is ORDERED AND ADJUDGED:

(1) With respect to plaintiff's claim for declaratory relief, it is adjudicated and declared that:

(a) Donna Stearns, acting in reliance on promises of confidentiality by Mechtronics, provided to Mechtronics:

(1) A mechanical model of a self-leveling sign hanging device;

(2) A photograph of the self-leveling sign hanging device;

(3) A patent disclosure statement;

(4) An explanation as to how the self-leveling sign hanging device functioned;

(5) Her opinion that there was a marketplace need for self-leveling sign hanging devices;

(b) Donna Stearns, acting in reliance upon promises of confidentiality by Mechtronics, also disclosed to Mechtronics:

(1) A device to raise and lower a sign from a ceiling;

(2) A device to raise and lower a sign that was self-leveling (i.e., the sign would remain level at all times);

(3) A device for suspending signs containing a sign holder to hold the sign;

(4) A device for suspending signs containing a sign holder where the sign holder's sheaves are spaced equidistantly from their respective ends;

(5) A cord supporting the sign holder;

(6) A drum from which the cord would wind and unwind thereby raising or lowering the sign;

(7) A cord which supports the sign holder that runs from a fixed point on the ceiling to a drum;

(8) A device for suspending signs containing a sign holder where the distance between the sign holder's sheaves and the cord-attaching unit and drum are the same;

(9) Two pulleys attached to the sign-holder through which the cord runs;

(10) A motorized means to turn the drum and thereby wind and unwind the cord to raise and lower the sign;

(11) A remote control device to activate the motor to turn the drum, thereby winding and unwinding the cord to raise and lower the sign;

(c) Mechtronics thereafter revealed to the Patent and Trademark Office in Mechtronics' 1995 application for a patent, and to Arthur Torrence and Cary Cieciuch before that application was filed, material information contained in Donna Stearns' confidential disclosures to Mechtronics, and did so without the manifest consent (express or implied in fact) of Donna Stearns;

(d) Sign–A–Way (as assignee of Donna Stearns) failed, however, to show by a preponderance of the evidence that Mechtronics' conduct in revealing material information contained in Donna Stearns' confidential disclosures caused measurable harm to Sign–A–Way;

(e) Donna Stearns' disclosures to Mechtronics included matter not otherwise known to Mechtronics, not generally known, useable in the operation of a business or other enterprise, affording an actual or potential economic advantage over others, and of measurable benefit to Mechtronics,

(f) Mechtronics attempted to use Donna Stearns' disclosures concerning the Self–Leveling Sign Hanging Device for its own benefit in making the 1995 patent application and in other ways, and did so without the consent of Donna Stearns (express or implied in fact), and in fact did obtain benefit. Sign–A–Way failed, however, to show by a preponderance of the evidence that Sign–A–Way suffered any reasonably certain amount of loss as a result;

(g) Mechtronics made a promise to Donna Stearns that Mechtronics would list her as inventor in the 1995 application to the Patent and Trademark Office, broke that promise, and in that con-

duct violated the duty of candor and good faith in dealing with the Patent and Trademark Office under 37 Code of Federal Regulations § 1.56 and its duty of due respect for the interests of Sign–A–Way (as Donna Stearns' assignee) and Donna Stearns, causing loss to Donna Stearns and Sign–A–Way;

(h) Mechtronics displayed a model of the Self–Leveling Sign Hanging Device in the Trade Show of 1996, with the word "patented," which was thus likely to deceive or mislead potential purchasers, and displayed the model with a sign stating that it was patented, which was likely to cause confusion among potential purchasers concerning Sign–A–Way's and Mechtronics' rights and the rights of ownership of the device and to the origin of the sign suspension device.

(2) Judgment is awarded to Sign–A–Way against Mechtronics in the amount of $220,000 in compensatory damages based on the stipulations, jury findings and rulings declared and adjudged in (1) above and the jury findings identified in (a)–(b) immediately below, which establish two independent grounds for this award of $220,000.

(a) The first ground is the jury's finding of $200,000 in answer to Question II.5(a)(1) and prejudgment interest of $20,000 found in Question II.9(xi).

(b) The second ground is the jury finding of $200,000 in answer to Question II.6(a)(1)· and prejudgment interest of $20,000 found in Question II.9(xiii).

(3) In all other respects, as to all claims of Sign–A–Way against Mechtronics, the court orders judgment for Mechtronics.

(4) With respect to Mechtronics' counterclaims against Sign–A–Way, the court orders judgment for Mechtronics for compensatory damages in the amount of $36,400 (which includes $8,400 in prejudgment interest) based on:

(a) the jury's findings of $28,000 in answer to Question III.3(a)(2) and of $8,400 in answer to Question IV.4; and

(b) the finding in answer to Question IV.3(b)(2)(i) that the finding of $28,000 in answer to Question IV.3(a)(2) is duplicative of the finding of $1,000 in answer to Question IV.1(b)(1).

(5) In all other respects, as to all counterclaims of Mechtronics against Sign–A–Way, the court orders judgment for Sign–A–Way.

(6) Each party will bear its own costs.

(7) All awards of damages and costs bear postjudgment interest at the federal judgment rate of 5.391% per annum.

Approved: By the Court

/s/ /s/

United States District Joanne M. Cull, Deputy
Judge Clerk

## III. Rulings on Mechtronics' Motion for Judgment as a Matter of Law

### A. Affirmative Defenses of Waiver and Estoppel

In pretrial proceedings and during trial, Mechtronics and Sign–A–Way each sought a ruling as a matter of law in its favor on Mechtronics' affirmative defenses of waiver and estoppel. The court concluded that none of the precedents that the parties relied upon was precisely in point and that the court should submit some potentially material questions of disputed historical fact and disputed evaluative inferences to the jury in anticipation that their verdict would be likely, at the least, to moot some of the disputes of law. I now conclude that key findings of the jury, well supported by the evidence received for their consideration, do moot some but not all of the disputes of law. Also, I conclude again after considering the post-judgment submissions, as I had concluded before ordering judgment, that the jury findings that were not recited in the form of judgment ordered by the court and entered by the Clerk were appropriately omitted because they were not material to any of the declaratory or monetary relief ordered. Including the omitted recitations anywhere in the form of judgment would confuse rather than clarify the terms of the judgment.

■ Mechtronics' first contention is that Donna Stearns "consented" to Mechtronics' "having made the application and to its con-

tent." That application omitted any naming of Donna Stearns as inventor. Docket No. 114 at page 2. The awkward and ambiguous phrasing of this contention, which Mechtronics has persistently used throughout pretrial, in trial, and now in post-judgment presentation of this contention, is apparently an effort to evade the consequences of Mechtronics' deception of Donna Stearns by nondisclosure. Mechtronics did not tell Donna Stearns what they were doing in the application, or had done, until her demand for an explanation created a necessity for disclosure. The evidence before the jury supported the following findings of the jury:

### G. Applications to the Patent Office— 1995 and 1996 (Alleged Promise to Name Donna Stearns as Inventor)

*9(a). Did Mechtronics make a promise to Donna Stearns that you find to be applicable to either or both of the 1995 and 1996 applications, in which part of the promise was that Mechtronics would list her as inventor:*

*(a) with respect to the 1995 application?*

 _X_ YES \_\_\_\_\_ NO

*(b) with respect to the 1996 application?*

 _X_ YES \_\_\_\_\_ NO

*If YES to either part of 9(a), go to the same part of 9(b). Otherwise, skip 9(b).*

*9(b). Did Donna Stearns rely on Mechtronics' promise to list her as inventor,*

*(1) with respect to the 1995 application?*

 _X_ YES \_\_\_\_\_ NO

*If YES to either part of 9(b), go to the same part of 9(d). Otherwise, skip 9(d).*

*9(c). In the circumstances occupied by Donna Stearns, would an ordinarily prudent person have relied upon the promise to list her as inventor*

*(1) by Christopher Anderson?*

 _X_ YES, we find by a preponderance of the evidence

 \_\_\_\_\_ NO, we find by a preponderance of the evidence

 \_\_\_\_\_ We find that there is no preponderance of the evidence

*(2) by Richard Fellinger?*

 _X_ YES, we find by a preponderance of the evidence

 \_\_\_\_\_ NO, we find by a preponderance of the evidence

 \_\_\_\_\_ We find that there is no preponderance of the evidence

*(3) in the February 7, 1994 Letter?*

 \_\_\_\_\_ YES, we find by a preponderance of the evidence

 _X_ NO, we find by a preponderance of the evidence

 \_\_\_\_\_ We find that there is no preponderance of the evidence

*9(d). Did Mechtronics break its promise to list her as inventor,*

*(1) with respect to the 1995 application?*

 _X_ YES \_\_\_\_\_ NO

Mechtronics' request that the court disregard these findings and rule that the court should call Donna Stearns' conduct a "consent" to her not being listed as an inventor, when she plainly did not consent, in fact, is without merit. Mechtronics contends that the answers to Verdict Questions I.4(d)(1), I.10(c) and I.4(d)(3) require a conclusion that defendant met its burden of proving all of the elements of defenses of waiver, consent and estoppel. All that the answer to Question I.4(d)(1) finds, however, is that Donna Stearns knew that Mechtronics revealed "material information" to the United States Patent and Trademark Office, Arthur Torrence and Cary Cieciuch. This finding does not determine that Donna Stearns knew all of the contents of the application at the time that the application was made.

Furthermore, the contention that the answer to Question I.10(c) must mean that Donna Stearns consented to the filing of the 1995 Application without her name being listed as an inventor is not sustainable. The finding in Question I.10(c) does not specifically refer to consent to the failure to name Donna Stearns as inventor, and, in light of other evidence before the jury regarding later promises to amend the 1995 Application, the finding in Question I.10(c) cannot be interpreted as determining that Donna Stearns consented to an application in breach of Mechtronics' earlier promise to her, *see* Question I.9, that her name would be included in the application.

In any event, Mechtronics failed during trial to present to the jury any evidence that

could reasonably support a finding that Donna Stearns consented to the exclusion of her name from the list of inventors that appeared in the 1995 Application. Indeed, the evidence before the jury would not support a finding other than that she never consented to not being named as an inventor.

The precedents that Mechtronics cites come nowhere near to holding that a contrary-to-fact ruling of consent should be made by the court in the circumstances of this case. Of course a party may "waive" rights, as cases cited by Mechtronics declare. But the jury never made findings of fact that would support waiver, and the jury did make findings inconsistent with waiver.

Mechtronics argues for estoppel, but again seeks a ruling without findings of fact that are essential to invoking precedents on estoppel. I reject this estoppel contention because of lack of support in the verdict, and because several findings in the verdict are inconsistent with the prerequisites of a ruling that the defense of estoppel was established at trial. For example, in answer to the three separate parts of Question I.3(d), the jury found that Sign–A–Way met its burden of proving that (1) Christopher Anderson, (2) Richard Fellinger, and (3) one or more other representatives of Mechtronics did not tell Donna Stearns that Mechtronics did not intend to keep confidential the disclosures that she made to Mechtronics. The undisputed use of those disclosures in development of the device that was the subject of the 1995 Patent Application, together with their failure to notify her of the content of their disclosures until she happened to learn about the application and demand explanation, is fundamentally inconsistent with Mechtronics' estoppel contention.

**B. Mechtronics' Request for a Ruling Against Stearns and Sign–A–Way Grounded on Alleged Failure of Stearns to Protect Information**

■ Mechtronics' second contention is that the award of damages to Donna Stearns cannot stand because Donna Stearns did not take reasonable steps to protect the "material information" that she disclosed to Mechtronics, *see* Verdict at I.1 and I.2, from being acquired by other parties. By assert-

ing this contention in an ambiguous and imprecise manner, Mechtronics attempts to characterize the following finding in Question I.5(a) as barring recovery by plaintiff under one or more of plaintiff's asserted causes of action. Question I.5 appeared in a section of Question I headed "D. Trade Secrets." Questions I.5(a) and the answers to it were as follows:

*5. This question concerns care in protecting confidential information about the Self–Leveling Sign Hanging Device.*

*5(a). Did Donna Stearns violate the standard of due respect for the interests of Mechtronics to protect secrecy and avoid disclosure*

> to persons and entities other than Mechtronics

> of the information about the Self–Leveling Sign Hanging Device that she disclosed to Mechtronics after receiving a promise of confidentiality from Mechtronics?

> (1) __X__ We find by a preponderance of the evidence that she made disclosures to persons or entities other than Mechtronics that a reasonable person in her circumstances would not have made

> (2) _____ We find by a preponderance of the evidence that any disclosures she made to persons or entities other than Mechtronics were made in circumstances in which a reasonable person would have felt free to make them

> (3) _____ We unanimously find no preponderance of the evidence on this matter

Mechtronics contends that this finding bars recovery by plaintiff under a theory of breach of the confidentiality agreement and under a theory of misappropriation of trade secrets based on Mechtronics' handling of the information governed by the confidentiality agreement between the parties. Mechtronics has not identified why, and this court cannot identify any reason why, the answer to Question I.5(a) could bar recovery under other claims Sign–A–Way has asserted, including, but not limited to, Sign–A–

Way's claim that Mechtronics is liable for failing to carry out its promise to name Donna Stearns as an inventor in the 1995 Application.

Mechtronics' arguments that Donna Stearns' failure to protect information should affect the judgment in this case fail for another reason. In the Verdict, the jury awarded plaintiff money damages resulting from Mechtronics' breach of its promise to list Donna Stearns as an inventor on the 1995 Application. Verdict at II.5(a). The jury did not award money damages to plaintiff in compensation for harm resulting from Mechtronics' disclosure to third parties of the information that the jury found was protected by the confidentiality agreement. *See* Verdict at II.1, II.3, II.4, and II.7. In addition, the jury did not award damages in compensation for any misappropriation of ideas by Mechtronics. Verdict at II.2. The jury's findings in these respects necessarily imply that the jury found that, even if Mechtronics violated a duty of confidentiality to Donna Stearns by making certain disclosures to third parties, Mechtronics' disclosure caused no tangible harm to plaintiff.

For that reason, the findings of the jury in Part II moot the question of law as to whether, in this case, Mechtronics still had a duty of confidentiality to plaintiff, even after identified disclosures by plaintiff to certain third parties.

A required element of both the tort of misappropriation of trade secrets and of an action for breach of a contract of confidentiality in Massachusetts is that the conduct of the defendant must cause tangible harm to the plaintiff. *Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 168, 385 N.E.2d 1349, 1355 (1979). In this case, the jury has unambiguously found that plaintiff failed to meet its burden to show that Donna Stearns and Sign–A–Way suffered harm from the alleged breach of the duty of confidentiality, regardless of whether that duty arose as a matter of law, if at all, from the confidentiality agreement or by operation of law. These findings serve Mechtronics' interest as a shield against liability for breach of the confidentiality agreement. Mechtronics, not content with that benefit, asks the court to treat these findings also as a shield against Mechtronics' liability for breach of its other promises and obligations to Donna Stearns, to which Sign–A–Way has succeeded as assignee. This proposed expansion of a shield against one claim to become a shield against all other claims is not supported in this case either factually or legally.

Neither is Mechtronics correct in contending, in effect, that the declaratory relief included in the Judgment of April 8, 1998 constitutes a judgment for plaintiff on counts asserting a breach of a duty of confidentiality. The declaratory judgment of April 8 is clear in stating that the jury found that the breach of a duty of confidentiality did not cause any harm to plaintiff:

 (c) Mechtronics thereafter revealed to the Patent and Trademark Office in Mechtronics' 1995 application for a patent, and to Arthur Torrence and Cary Cieciuch before that application was filed, material information contained in Donna Stearns' confidential disclosures to Mechtronics, and did so without the manifest consent (express or implied in fact) of Donna Stearns;

 (d) Sign–A–Way (as assignee of Donna Stearns) failed, however, to show by a preponderance of the evidence that Mechtronics' conduct in revealing material information contained in Donna Stearns' confidential disclosures caused measurable harm to Sign–A–Way;

 (e) Donna Stearns' disclosures to Mechtronics included matter not otherwise known to Mechtronics, not generally known, useable in the operation of a business or other enterprise, affording an actual or potential economic advantage over others, and of measurable benefit to Mechtronics;

 (f) Mechtronics attempted to use Donna Stearns' disclosures concerning the Self–Leveling Sign Hanging Device for its own benefit in making the 1995 patent application and in other ways, and did so without the consent of Donna Stearns (express or implied in fact), and in fact did obtain benefit. Sign–A–Way failed, however, to show by a preponderance of the evidence that Sign–

A–Way suffered any reasonably certain amount of loss as a result. . . .

The declaratory judgment explicitly stated that plaintiff failed to prove at trial one of the elements required by law for relief grounded on breach of a duty of confidentiality. The declaratory judgment, therefore, cannot properly be treated as a judgment for plaintiff that adjudicates, in plaintiff's favor, those counts asserting a breach of a duty of confidentiality.

For these reasons, I conclude that the findings of the jury have made moot a determination regarding the existence and scope, as a matter of law, of a duty of confidentiality running from Mechtronics to Sign–A–Way regarding the "material information" that Donna Stearns disclosed to Mechtronics.

## C. Mechtronics' Request for a Ruling in Its Favor Because the Money Award Constitutes a Recovery of Attorney's Fees

██ Mechtronics' third contention in moving for judgment as a matter of law is that the $200,000 awarded by the jury must have been an impermissible award of attorney's fees because evidence regarding the cost of the present litigation suggested a cost for plaintiff of $200,000.

The jury awarded plaintiff $200,000 in compensatory damages. The jury found this amount to be the appropriate amount of compensation in their answer to the following questions in Part II of the Verdict:

*If YES to either part I.9(b), go to the corresponding part of II.5. Otherwise, skip II.5.*

*5(a). What amount of money, if any, is needed to compensate Sign–A–Way fairly and reasonably for harm, if any, that Mechtronics' failure to list her as inventor caused? Answer in DOLLARS or NONE.*

*(1) With respect to the 1995 application*
 *$ 200,000.00*

*(2) With respect to the 1996 application*
*$ NONE*

*If you have answered either part of 5(a) with a DOLLAR amount, go to 5(b). Otherwise, skip 5(b).*

*If YES to any part of I.10(a) and any part of I.10(b), go to II.6. Otherwise, skip II.6.*

*6(a). What amount of money, if any, is needed to compensate Sign–A–Way fairly and reasonably for any loss to Sign–A–Way caused by conduct of Mechtronics in violation of a duty to Sign–A–Way and Donna Stearns regarding candor and good faith in dealing with the Patent and Trademark Office? Answer in DOLLARS or NONE.*

*(1) In making the 1995 application*
 *$ 200,000.00*

*(2) In making the 1996 application*
*$ NONE*

*If you have answered either part of II.6(a) with a DOLLAR AMOUNT, go to 6(b). Otherwise, skip 6(b).*

*6(b). How much, if any, of the amount or amounts you have found is duplicative? Answer in DOLLARS or NONE.*

*(1) With respect to the amount in 6(a)(1)*
 *(xi) Duplicative as to*
 *5(a)(1)* *$ 200,000.00*

The jury, therefore, found plaintiff entitled to $200,000 in compensatory damages based on two independent theories of claim.

██ Defendant's contention that the $200,000 must have been awarded as attorney's fees calls for this court to speculate in an impermissible manner into the decision-making processes of the jury. In deciding a postjudgment motion for judgment as a matter of law under Fed.R.Civ.P. 50(b), a court is not to speculate into the particular thought processes of jurors; rather the court's inquiry is limited to determining whether no reasonable jury could have made the challenged finding in light of the evidence presented to the jury. *See McMillan v. Massachusetts Soc'y for the Prevention of Cruelty to Animals,* 140 F.3d 288, 299 (1st Cir.1998) ("We will not set aside a jury verdict as a matter of law unless there was only one conclusion the jury could have reached."). *See also Plummer v. Springfield Terminal Ry. Co.,* 5 F.3d 1 (1st Cir.1993), *cert. denied,* 510 U.S. 1112, 114 S.Ct. 1057, 127 L.Ed.2d 377 (1994). In determining the appropriateness, as a matter of law, of a jury's award of money damages,

the court is authorized to override that award only if it exceeds "any rational appraisal or estimate of the damages that could be based on the evidence before the jury." *Anthony v. G.M.D. Airline Services, Inc.,* 17 F.3d 490, 493 (1st Cir.1994). If the court determines that a reasonable jury could have found, in light of the evidence presented to the jury in this case, that $200,000 was an appropriate amount to compensate plaintiff, the court's inquiry stops at that determination because strong interests of secrecy and independence of jury decisionmaking and applicable law counsel against even attempting to ferret out the precise reasoning that led the jury to its finding.

For the reasons explained below, I conclude that plaintiff presented sufficient evidence to the jury to allow a reasonable jury to award $200,000 in compensatory damages to plaintiff based on at least one of the theories of claim as to which the findings of the jury supported judgment for plaintiff. This is not an exhaustive exploration into all possible trains of thought by which the jury might have arrived at the $200,000 figure. The applicable law does not require that the court explore every possible train of thought that the jury might have followed as long as there was one train that it could have reasonably followed. *See Johnson v. Teamsters Local 559,* 102 F.3d 21, 23 (1st Cir.1996).

As Exhibit 32 shows, Mechtronics' 1995 Application for a Patent on the Self–Leveling Sign Hanging Device was accompanied by a Joint Declaration and Power of Attorney signed by each of the inventors named in the application. The governing regulations require, as stated in that exhibit, that all statements of invention contained therein be accurate. Through this declaration and power of attorney, each "joint inventor" affirmed that he invented the device and that he was represented by Haynes Johnson, Mechtronics' patent counsel, in all matters before the United States Patent and Trademark Office (USPTO).

As a named inventor to the Self–Leveling Sign Hanging device on which Mechtronics sought a patent, Donna Stearns would have been in a position that would have allowed her to either block the application or demand some compensation by refusing to sign the Joint Declaration and Power of Attorney.

From the evidence before the jury, they could have reasonably inferred that, by excluding Donna Stearns from the list of inventors in breach of a promise to her to name her, Mechtronics circumvented its obligation to obtain Donna Stearns' approval of the 1995 Application because Mechtronics was then not required by law to get Donna Stearns to endorse the Joint Declaration and Power of Attorney. And from that inference and testimony regarding the application process, the jury could have reasonably determined that, as a result of not listing Donna Stearns as an inventor, Mechtronics was able to file, at a very early stage, an application for a patent. The jury could also reasonably infer that the early filing of this application by Mechtronics created a problem with the Patent Office that later caused Donna Stearns' or Sign–A–Way not be able to obtain a patent on the device.

From the evidence before them, then, the jury also could have reasonably inferred that Donna Stearns' or Sign–A–Way's inability to obtain a patent prevented Donna Stearns and Sign–A–Way from realizing profits from the sale of the device on an exclusive basis for a limited period of time during which Sign–A–Way might have had net profits in the range of $200,000.

Plaintiff presented to the jury evidence, in the form of expert testimony, that supports an implicit finding that the profitability of the device to Sign–A–Way would be exponentially magnified if the USPTO conferred a patent to Sign–A–Way on the Self–Leveling Sign Hanging Device. If no patent was conferred, the testimony showed that the manufacturer would have to "flood the market," a proposition that would make it harder, if not outright impossible, for Donna Stearns and Sign–A–Way to manufacture and to market the device. In addition, it is a commonly known proposition that a patent, in some instances, confers rights analogous to a temporary monopoly on the design and production of a good that is aimed at compensating the costs of developing that good.

Plaintiff presented the testimony of expert witness Michael Hoffman. Mr. Hoffman is an impressively qualified entrepreneur with a distinguished background in finance and marketing. Perhaps even more relevant to this case, Mr. Hoffman is a principal in one of the nation's leading companies in the business of signage, Rose Displays, Inc. He is also either a director or member of each of the leading trade associations in the signage industry. Upon plaintiff's request and in preparation for this litigation, Mr. Hoffman prepared a model that predicted the revenues that would result from Sign-A-Way's marketing of the device given certain assumptions. Those assumptions included assumptions about the types of stores that would be interested in the device, what companies Donna Stearns already had serviced in the past, and the expected expansion rate for companies in the relevant categories as reported by certain research specialists. This model produced revenue projections for sales of the Self-Leveling Sign Hanging Device assuming that Donna Stearns would obtain a patent in her favor. Hoffman's testimony reported that his model produced predicted revenues for plaintiff of $300,000 for 1994, $1,800,000 for 1995, $3,000,000 for 1996, and $5,250,000 for 1997.

In this case, the jury could have reasonably credited Mr. Hoffman's testimony and could have used it as support for a finding that Sign-A-Way was entitled to compensatory damages without necessarily adopting any specific amount that he mentioned, as long as the amount awarded was not unreasonable in light of the totality of the evidence before the jury. The jury's award is reasonably consistent for example, with the jury's crediting Mr. Hoffman's estimates of revenues, and the net profits implied by those revenues in light of other evidence before them, for a temporary period (that is, less than the four years that Hoffman's model covered).

██ The failure of the special questions to require an itemization of the calculations through which the jury arrived at the award does not affect the appropriateness as a matter of law of the award in the absence of identified circumstances that raise serious questions about the integrity and rationality of the verdict. *See Plummer; Johnson v. H.K. Webster, Inc.,* 775 F.2d 1, 9-10 (1st Cir.1985). In this case, Mechtronics has not shown any appropriate reasons why this court should have inquired about specific calculations.

In addition, Mechtronics has failed to meet its burden to show that Mr. Hoffman's testimony was not a valid ground of evidentiary support for the jury's award of damages. *See Jay Edwards, Inc. v. New England Toyota Distrib., Inc.,* 708 F.2d 814, 819 (1st Cir.), *cert. denied,* 464 U.S. 894, 104 S.Ct. 241, 78 L.Ed.2d 231 (1983). In this case, defendant did not present evidence that, as a matter of law, required the jury to disregard Mr. Hoffman's projections or that would require this court to reverse any findings of the jury that are supported by his testimony. Furthermore, defendant had an opportunity to cross-examine Mr. Hoffman and to convince the jury that his testimony should not be credited.

For these reasons, I conclude that the jury's award of money damages is not an irrational appraisal of the estimated revenues predicted by Hoffman's model and the other estimates regarding costs that were before the jury.

### D. Mechtronics' Request for a Ruling that the Money Award is Wholly Unsupported by the Evidence

Mechtronics' fourth contention is that the jury's award of money damages to Sign-A-Way is wholly unsupported by the evidence. For the reasons explained in Part III.C of this Opinion, I conclude that Mechtronics has failed to meet its burden to show that it is entitled to judgment as a matter of law on this ground.

### E. Duty of Candor and Good Faith

██ Mechtronics's fifth contention argues (1) that, as a matter of law, Mechtronics duty of candor and good faith to the Patent and Trademark Office does not give rise to a duty owed to Donna Stearns, (2) that the jury based its award of money of damages on a violation of the duty to the USPTO, and (3)

that, in any event, a violation of that duty must be shown by clear and convincing evidence, not a preponderance of the evidence.

I conclude that Mechtronics' fifth contention fails to present any decisive question of law with respect to the final judgment ordered by this court and entered by the Clerk. As explained above, the jury awarded Sign–A–Way money damages of $200,000 plus prejudgment interest of $20,000 on two independent grounds: (1) Mechtronics' breach of its promise to list Donna Stearns as an inventor, and (2) Mechtronics' violation of the duty of candor and good faith. A determination by this court that, as a matter of law, the award of damages was inappropriate as to (2) would still not entitle Mechtronics to judgment in light of this court's rulings on Mechtronics' other contentions in support of its motion for judgment as a matter of law and at trial.

For these reasons, I conclude that Mechtronics is not entitled to judgment as a matter of law based on its fifth contention.

### F. Particularity of Damages

Mechtronics sixth contention is that Sign–A–Way has failed to show damages with the requisite particularity. Mechtronics contends that money damages must be proved with reasonable particularity in order to prevail on a claim for lost profits resulting from a misappropriation of trade secrets or ideas. For the reasons explained and in light of the rulings made in Part III.C and III.D of this opinion, I conclude that Mechtronics is not entitled to judgment as a matter of law on this ground.

### G. Other Contentions Regarding Modification of Final Judgment

In its other contentions, Mechtronics argues that this court must modify the form of final judgment to itemize the amount of recovery for certain claims. Mechtronics advances this contention with respect to claims asserting a violation of the Lanham Act, unjust enrichment, a violation of the Connecticut Unfair Trade Practices Act, and unfair competition. In addition, Mechtronics requests that the court modify the declaratory aspects of the judgment to include a recitation of certain additional findings of the jury.

These contentions, in effect, ask this court to make rulings on questions of law that the findings of the jury mooted and that the final judgment clearly and completely adjudicates.

I conclude that the Final Judgment ordered by this court and entered by the Clerk unambiguously adjudicates all of plaintiff's asserted claims.

Furthermore, to recite the findings that Mechtronics contends this court should add to the declaratory judgment would only lead to confusion as to the meaning and enforceability of the Final Judgment as a whole, without aiding interested parties to comprehend, clearly and precisely, what the Final Judgment means. The fact that a jury finding is not listed in the declaratory section of the judgment does not in any way limit its effectiveness and validity as a decisive determination of material fact, even when considered from the perspective of a later decisionmaker presented with an argument that the Verdict and Final Judgment in this case support a determination in favor of one or another party regarding claim preclusion or issue preclusion.

For these reasons, I conclude that Mechtronics' requests for modification of the form of final judgment must be denied.

### IV. Rulings on Sign–A–Way's Postjudgment Motions

### A. Liability of Sign–A–Way, Inc. for Preincorporation Conduct of Donna Stearns

For the reasons explained below, I conclude that Sign–A–Way cannot be held liable for harm caused by preincorporation acts of Donna Stearns.

### 1. Sign–A–Way's Contention

Sign–A–Way's first contention in moving for judgment as a matter of law is that Sign–A–Way, Inc., as a matter of law, cannot be held liable for harm to Mechtronics resulting from conduct of Donna Stearns that occurred before the incorporation of Sign–A–Way.

The jury made the following findings awarding money damages to Mechtronics in Part IV of the Verdict, concerning "IV.

DAMAGES AWARDS, IF ANY, FOR ME-
CHTRONICS AGAINST SIGN–A–WAY."

*If YES to any of III.1(a)–(d)(1) or
III.1(b)(1), go to 1, immediately below. Oth-
erwise, skip 1.*

 *1(a). Did Sign–A–Way use for its own
benefit information Mechtronics
disclosed to Sign–A–Way about the
Self–Leveling Sign Hanging Device
without compensating Mechtronics
fairly and reasonably for the use?*

 **X** YES \_\_\_\_ NO

*If YES to 1(a), go to 1(b). Otherwise, skip
1(b).*

 *1(b). What amount of money, if any, is
needed to compensate Mechtronics
fairly and reasonably for misappro-
priation? Answer in DOLLARS or
NONE.*

 *(1) For use of the Mechtronics' microchip*
 $ 1,000.00

 *(2) For use of customer lists, marketing
 .contracts and leads*
 $ NONE

*If you have answered both parts of III.1(b)
with a DOLLAR amount, go to 1(c). Other-
wise skip 1(c).*

 *1(c). How much, if any, of the amounts
you have found is duplicative? An-
swer in DOLLARS or NONE.*
 $ NONE

. . .

*If YES to either part of III.3(a), to 3, imme-
diately below. Otherwise, skip 3.*

 *3(a)(1). What amount of money, if any,
is needed to compensate Mechtronics fairly
and reasonably for any loss to Mechtronics
caused by Donna Stearns' arranging for re-
moval of the model in the Pet Supply store?
Answer in DOLLARS or NONE.*
 $ NONE

 *3(a)(2) What amount of money, if any, is
needed to compensate Mechtronics fairly
and reasonably for any loss to Mechtronics
caused by Donna Stearns' making the ar-
rangements she made with Selectronics for*
*developing and making a model? Answer
in DOLLARS or NONE.*
 $ 28,000.00

*If you answered either part of 3(a) with a
dollar amount, go to 3(b). Otherwise skip
3(b).*

 *3(b). How much, if any, of the amount or
amounts you have found is duplicative?
Answer in DOLLARS or NONE.*

 *(2) With respect to the amount found in
 3(a)(2)*

 *(i) Duplicative as to
 1(b)(1)* $ 1,000.00

*4. If you have awarded a sum of money
in any question in Part IV, answer the
corresponding part of this question. Other-
wise skip this question.*

*What, if any, prejudgment interest do you
award? Answer in DOLLARS or NONE.*

*On the sum awarded in 3(a)(2), $ 8,400.00 in
 prejudgment interest*

Plaintiff's first contention is not decisive
with respect to the jury's finding in Question
IV.1(b). The Question asked whether Sign–
A–Way misappropriated a benefit. In order
to obtain a judgment as a matter of law that
disregards the finding in Question IV.1(b),
Sign–A–Way must show that no jury, acting
reasonably and with a correct understanding
of the court's instructions on the law, could
have made that finding in light of the evi-
dence before this jury. The evidence re-
ceived was sufficient to support a finding that
acts of officers and representatives of Sign–
A–Way after the time of its incorporation, as
well as before, were among the events ac-
counting for and contributing to the misap-
propriation of benefit found by the jury as
the basis for its award of $1,000 in answer to
Question IV.l(b).

Plaintiff's first contention, however, de-
serves this court's attention with respect to
the jury finding in answer to Question
IV.3(a)(2) because that question referred to
whether particularly identified conduct of
Donna Stearns caused harm to Mechtronics,
and that conduct ("making the agreements
she made with Selectronics for developing
and making a model") occurred before Sign–
A–Way, Inc. came into existence.

It is undisputed in the parties' contentions and in the evidence submitted to the jury that the Stearns (Donna and her husband) had not even considered forming Sign–A–Way at the time of this conduct that the jury found to support an award of damages to Mechtronics.

The parties, on both sides of this case, made many strategic choices during pretrial and trial proceedings. One of those choices made by Mechtronics was to dismiss its claims against Donna Stearns individually and proceed to trial against the less potentially sympathetic target, Sign–A–Way, Inc. The parties were not required to, and did not, proffer evidence as to their reasons and motives, and I make no findings on that subject. Rather, the observation that I have just stated is an observation about potential considerations bearing upon strategic choices as they may be seen by a neutral observer.

Also, neither plaintiff nor defendant submitted in evidence, or in any other way placed before the court, a copy of the assignment agreement by which Donna Stearns allegedly assigned to Sign–A–Way any rights that may arise from the outcome of this litigation. The parties must live with the consequences of their strategic choices, including their respective decisions not to proffer evidence about the bases for them.

 Ordinarily, under generally applicable principles of the law of agency, a corporation cannot be held liable for the torts of a person who was a promoter or planner and later became shareholder, officer, director, or agent, if the tortious acts of that person occurred entirely before the formation of the corporation was even contemplated by that person who later occupied one or more of these positions. See *Murphy v. I.S.K. Con. of New England, Inc.*, 409 Mass. 842, 864, 571 N.E.2d 340, 353 (1991) (reasonable for jury not to award damages for preincorporation harm caused by agents). No duty arises for the corporation to disassociate itself from a former tortfeasor if the tortious conduct has ended by the time of the incorporation. In this case, all of the tortious acts on the basis of which the jury could make findings, as they did, to support the award of $28,000 in answer to Question IV.3(a)(2), took place,

under the undisputed evidence before the court, before the formation of Sign–A–Way was even contemplated. The limitation of liability that is an essential element of the corporate form shields Sign–A–Way from liability for the preincorporation acts of Donna Stearns, unless some exception to this general rule of agency law applies to this case.

 Mechtronics implicitly advances what is in effect a "reverse-veil-piercing" argument in its effort to establish some authorized exception to the generally applicable law of agency. Decisions of the Supreme Judicial Court of Massachusetts, however, do not support a contention for "reverse-veil-piercing" against Sign–A–Way. In circumstances in which the corporate entity is used as a shield to perpetrate fraud at the expense of an innocent party, courts have sometimes chosen to pierce that shield. *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 620, 233 N.E.2d 748 (1968). To invoke such a rule, Mechtronics would need to show fraudulent purpose in the organization of Sign–A–Way. See *Gordon Chemical Co. v. Aetna Cas. & Sur. Co.*, 358 Mass. 632, 638, 266 N.E.2d 653, 657 (1971). Moreover, even if fraudulent purpose in the organization of the corporate entity were not treated as a prerequisite, in any event it would be Mechtronics' burden, in invoking any exception, to produce evidence that would support its factual allegations by a preponderance of the evidence. The burden to show that the corporate "veil" or "shield" should be pierced is on the party claiming that some wrongful conduct of the principals of the corporation requires that the formalities of the corporate entity be ignored. *Gurry v. Cumberland Farms, Inc.*, 406 Mass. 615, 625–26, 550 N.E.2d 127, 134 (1990). That burden is not an easy one to meet. *Id.* In this case, the temporal disconnection between the tortious conduct and the life of the corporation strongly supports the conclusion that, as a matter of law, on this trial record, Sign–A–Way cannot be held liable for the damages awarded to Mechtronics by the jury in answer to Question IV.3(a)(2).

For these reasons, Sign–A–Way's liability turns not on whether Sign–A–Way is liable for the preincorporation conduct of Donna

Stearns under rules of law that apply in the absence of a contractual assumption of liability but on whether Sign–A–Way assumed liability for the acts of Donna Stearns by an enforceable agreement or by other conduct that, in the circumstances of the relationship between them and with third parties, may have created a legally recognizable duty of Sign–A–Way to respond for any harm caused by Donna Stearns' previous conduct.

### 2. Mechtronics' Response

In its opposition to Sign–A–Way's motion for judgment as a matter of law, Mechtronics has not squarely attacked Sign–A–Way's contention that Sign–A–Way cannot be liable for the preincorporation acts of Donna Stearns. Instead, Mechtronics contends that the findings of the jury and the evidence of record in this trial entitle Mechtronics to recovery of damages on a theory of unjust enrichment.

Mechtronics asks this court to interpret the answers to Questions III.3(b) and IV.3(a)(2) as supporting a determination that the jury awarded all damages that they awarded to Mechtronics on a theory of unjust enrichment. Under a theory of unjust enrichment, Mechtronics contends, all Mechtronics needed to prove was that Sign–A–Way received a benefit, Sign–A–Way appreciated that benefit, and it would be inequitable for Sign–A–Way to retain that benefit. Mechtronics contends that the jury made findings in its favor with respect to these three questions.

Implicit in this contention of Mechtronics is the argument that Sign–A–Way cannot be shielded from the damages awarded in IV.3(a)(2) because the corporate veil of Sign–A–Way does not protect Sign–A–Way from its duty to pay Mechtronics for the benefit that Sign–A–Way has allegedly inequitably retained. The liability for unjust enrichment is not a liability for harm caused by others, the argument goes, but an equitable obligation that Sign–A–Way undertook by operation of law when it accepted and retained the alleged benefit.

The jury findings to which Mechtronics points, however, do not determine whether Sign–A–Way received a benefit. Those findings address only whether Donna Stearns caused harm to Mechtronics and how much harm she caused. That Donna Stearns' preincorporation conduct caused harm to Mechtronics does not necessarily mean that Sign–A–Way received a corresponding benefit, or even any benefit at all, from that conduct of Donna Stearns. The findings of the jury, therefore, are insufficient to support a conclusion that Mechtronics is entitled to judgment on its counterclaim asserting unjust enrichment.

The evidence before the jury did not provide any basis on which the jury could make a reasoned finding that Sign–A–Way derived some determinable amount of benefit for which a dollar award in some amount could be made.

For Mechtronics to prevail on its counterclaim alleging unjust enrichment, Mechtronics had to show that Sign–A–Way realized a benefit from the conduct that Mechtronics contends to be a cause of unjust enrichment.

### B. CUTPA

In its motion for judgment as a matter of law, Sign–A–Way contends that it is entitled to judgment on its claims asserted under the Connecticut Unfair Trade Practices Act (CUTPA). Sign–A–Way bases this contention, *inter alia*, on the following three arguments: (1) the findings of the jury support a conclusion that Mechtronics violated the Lanham Act and that is, as a matter of law, a per se violation of CUTPA; (2) the findings of the jury support a conclusion that Mechtronics committed fraud in failing to list Donna Stearns as an inventor on the 1995 Application; and (3) the finding of the jury that Mechtronics violated its duty of candor and good faith in dealing with the Patent Office and its duty of due respect for the interests of Sign–A–Way in making the 1995 Application supports a conclusion that Mechtronics violated CUTPA.

For the reasons explained in Parts IV.B.1–3 of this opinion immediately below, I conclude that Sign–A–Way is not entitled to judgment on its claims asserted under CUTPA.

## 1. Lanham Act

The jury made the following findings bearing upon Sign–A–Way's claim against Mechtronics under the Lanham Act:

### I. Mechtronics' Display at Trade Show of 1996

*11(a). Was the display of a model of the Self–Leveling Sign Hanging Device by Mechtronics*

*(1) with the word "patented"*

*likely to deceive or mislead potential purchasers?*

___X___ YES _____ NO

*(2) with a sign stating that it was patented*

*likely to cause confusion among potential purchasers*

*concerning Sign–A–Way's and Mechtronics' rights and the rights of ownership of the device?*

___X___ YES _____ NO

*(3) with a sign stating that it was patented*

*likely to cause confusion among potential purchasers*

*as to the origin of the sign suspension device?*

___X___ YES _____ NO

*11(b). Did Mechtronics*

*(1) make false representations as to the origin of the sign suspension device*

___X___ YES _____ NO

*If YES to 11(b)(1), answer 11(b)(2). Otherwise, skip 11(b)(2).*

. . .

[Part II]

*If YES to any part of I.11, go to II.7. Otherwise, skip II.7.*

*7(a). What amount of money, if any, is needed to compensate Sign–A–Way fairly and reasonably for any loss to Sign–A–Way caused by the conduct of Mechtronics in any of the following ways? Answer in DOLLARS or NONE.*

*(1) In displaying a model of the Self–Leveling Sign Hanging Device*

$ _____NONE_____

*(2) In making a false representation as to the origin of the sign suspension device*

$ _____NONE_____

*If you have answered either part of II.7(a) with a DOLLAR AMOUNT, go to 7(b). Otherwise, skip 7(b).*

The Final Judgment of April 8, 1998 does not grant Sign–A–Way judgment on its claim under the Lanham Act because the findings of the jury did not support Sign–A–Way's claim under the Act. To prevail in a cause of action under the Lanham Act, "plaintiff must show actual harm to its business." *Camel Hair and Cashmere Inst. v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir.1986); *Maple Grove Farms of Vermont, Inc. v. Euro–Can Prod., Inc.*, 974 F.Supp. 85, 96 (D.Mass.1997). *See also Brown v. Armstrong*, 957 F.Supp. 1293, 1301 (D.Mass.), *aff'd*, 129 F.3d 1252, 1997 WL 696059 (1st Cir.1997); *Pacamor Bearings, Inc. v. Minebea Co.*, 918 F.Supp. 491, 498 (D.N.H.1996). In answer to Question II.7(a), the jury found that Mechtronics' use at a trade show in 1996 of the word "patented" in connection with its display of the Self Leveling Sign–Hanging Device did not cause Sign–A–Way any harm. The evidence before the jury reasonably supported this finding. For these reasons, Sign–A–Way cannot contend that a violation of the Lanham Act in this case requires recovery under CUTPA as a matter of law.

In addition, CUTPA itself requires that Sign–A–Way prove that the conduct of Mechtronics giving rise to a cause of action under CUTPA caused harm to Sign–A–Way. In order to prevail in its CUTPA claim, Sign–A–Way had to prove at trial that it suffered "substantial injury" and "ascertainable loss" from some conduct of Mechtronics. *Service Road Corp. v. Quinn*, 241 Conn. 630, 639, 698 A.2d 258, 263 (1997); *Williams Ford, Inc. v. Hartford Courant Co.*, 232 Conn. 559, 591, 657 A.2d 212, 227 (1995) (citations omitted), *cited in Haynes v. Yale–New Haven Hosp.*, 243 Conn. 17, 34 n. 18, 699 A.2d 964, 972 (1997). As the answer to Question II.7 shows, Sign–A–Way failed to meet this burden.

For these reasons, Sign–A–Way's contentions that the court must award damages under CUTPA for an alleged violation of the Lanham Act or for any other conduct of Mechtronics from which the jury found that no harm resulted to Sign–A–Way are not sustainable.

## 2. Fraud and the Promise to List Donna Stearns as Inventor in the 1995 Application

■ Sign–A–Way also contends that the findings of the jury support a conclusion that Mechtronics committed fraud in failing to list Donna Stearns as an inventor on the 1995 Application, and that such a conclusion entitles Sign–A–Way to recovery under CUTPA.

In response to this contention, Mechtronics argues that the jury's answer to Question I.3(b) negates an essential element of fraud. But Question I.3(b) does not refer to the promise to list Donna Stearns as inventor. Rather, Question I.3(b) refers only to the promise of Mechtronics not to disclose certain material information to third parties. The jury's answer to Question I.3(b), therefore, is not a decisive determination as to whether Sign–A–Way met its burden to prove that Mechtronics' breach of its promise to list Donna Stearns as an inventor in the 1995 Application constituted fraud and supports an award of damages under CUTPA.

The findings of the jury do not support a conclusion that Mechtronics committed fraud in breaking its promise to Donna Stearns to list her as inventor on the 1995 Application. An essential element of fraud-by-false-promise is that the party making the promise intended not to keep it at the time of making the promise. *See Starr v. Fordham*, 420 Mass. 178, 186, 648 N.E.2d 1261, 1267 (1995); *Smith v. Frank*, 165 Conn. 200, 201, 332 A.2d 76, 77 (1973); *Flaherty v. Schettino*, 136 Conn. 222, 225, 70 A.2d 151, 152 (1949). No question before the jury addressed whether Mechtronics had the requisite intent not to keep the promise to list Donna Stearns as inventor on the 1995 Application. In light of the evidence before the jury, the question remains a genuine dispute of material fact because a reasonably jury could have found either "intent" or "no intent" on the evidence before this jury. For these reasons, this court cannot conclude, as a matter of law, that Sign–A–Way has met its burden to prove that Mechtronics intended not to keep its promise to list Donna Stearns as an inventor on the 1995 Application when Mechtronics made that promise to her.

Sign–A–Way cannot prevail on a claim by alleging an entirely new theory of fraud, for the first time, after the jury has reached a verdict. When plaintiff is:

aware of the factual predicate for the tort claim throughout the litigation and failed to raise that claim until after judgment ... it would be both unfair and substantially prejudicial to permit the injection of a new and different theory of liability at the very stroke of midnight.

*DCPB, Inc. v. City of Lebanon*, 957 F.2d 913, 917 (1st Cir.1992).

Sign–A–Way never alleged with particularity, either in its pleadings or at any time before the jury commenced deliberations, that Mechtronics committed fraud by breaking its promise to list Donna Stearns as an inventor. A party alleging fraud must plead it with particularity. Fed.R.Civ.P. 9(a). Sign–A–Way did not identify in any way the circumstances associated with its claim of breach of that particular promise in alleging fraud or a violation of CUTPA in its Amended and Restated Verified Complaint (attached to Docket No. 16, filed February 6, 1997).

During pretrial and trial proceedings, Sign–A–Way did not propose special questions that articulated questions of material fact with respect to the requisite elements of a theory of fraud based on Mechtronics' breach of the promise to list Donna Stearns as inventor in the 1995 Application, and Sign–A–Way did not object to the submission of the Verdict form to the jury for deliberation.

The structure of the Verdict and the drafting by plaintiff of questions that did ask about the facts material to the elements of fraud under other factual theories confirm that Sign–A–Way did not properly articulate its claim of fraud based on Mechtronics' breach of the promise to list Donna Stearns as inventor. For example, although Question

I.3 inquires as to the intent of Mechtronics and its agents to fulfill their promise not to disclose certain material information to third parties, Question I.8, which addresses the promise to list Donna Stearns as inventor, does not inquire as to Mechtronics' intent to fulfill that promise at the time that Mechtronics made it.

In particular, Sign–A–Way never proposed or otherwise articulated the need for a question with respect to Mechtronics' intent to keep that promise when Mechtronics made it. *See* Docket No. 42 at 3–4; Docket No. 51 at 3–4; Docket No. 63 at 7–8; Docket No. 107 at 7; Docket No. 110 at 12–13. And Sign–A–Way did not object to the lack of questions regarding facts material to fraud. Docket No. 10 at 12–13 (no mark-up).

As a result of Sign–A–Way's decision not to assert this claim with sufficient particularity or to submit material questions for inclusion in the proposed special verdict form at any time before deliberation started, the jury did not make findings that support a determination that Mechtronics committed fraud in connection with breaking its promise to list Donna Stearns as an inventor.

For these reasons, I conclude that Sign–A–Way cannot prevail, as a matter of law, on its contention that it is entitled to damages under CUTPA because Mechtronics committed fraud in breaking its promise to Donna Stearns to list her as an inventor in the 1995 Application.

### 3. Duty of Candor and Good Faith

Sign–A–Way further contends that the finding of the jury that Mechtronics violated its duty of candor and good faith in dealing with the Patent Office and its duty of due respect for the interests of Sign–A–Way in making the 1995 Application supports a conclusion that Mechtronics violated CUTPA.

Once again, Sign–A–Way, throughout both pretrial and trial proceedings, failed to indentify for the court or its opponent the factual basis for its claim under CUTPA for a violation of these duties. Neither the Amended Complaint nor any proposed special questions addressed whether Sign–A–Way met its burden in showing that Mechtronics' breach of the duty of candor and good faith to the Patent Office and of the duty of due deference to Sign–A–Way met other required elements of a violation of CUTPA other than causation of harm to Sign–A–Way. *See Williams Ford,* 232 Conn. at 591–93, 657 A.2d 212. This deficiency was the product of Sign–A–Way's deliberate strategic choice not to clarify its contentions at a stage before the jury commenced deliberations.

In addition, Sign–A–Way has not shown that the evidence before the jury compels a determination that, as a matter of law, recovery under CUTPA for Mechtronics' violation of the duty of candor and good faith to the Patent Office or its duty of due respect for the interests of Sign–A–Way. I conclude that, as a matter of law, it does not.

### C. Equitable Relief

In its postjudgment motion for judgment as a matter of law, Sign–A–Way continues to contend that this court should grant further equitable relief than this court did grant, in the form of a declaratory judgment, in the Judgment of April 8, 1998.

Given the jury's finding that there is no prospectively continuing harm to Sign–A–Way, no grounds exist for further equitable relief. The evidence before the jury supported this finding and is consistent with an award of money damages that grants less than the total amount of damages suggested by plaintiff's expert witness on damages.

### D. Proposed Striking of Finding of Consent by Donna Stearns to 1995 Application

The finding of the jury that Sign–A–Way, just like Mechtronics, characterizes as one of "consent to the 1995 Application" was a reasonable finding of the jury. The problem is not with the finding, but with the parties characterizations of the finding that ask this court to rule, as a matter of law, on issues that the are likely to be material to them in matters outside this civil action but that were not material to the claims asserted in this case that went to the jury.

As explained above in Part III.A, the supposed finding of consent to the 1995 Application is in reality only a finding of consent to the disclosure of certain material information to the USPTO in the 1995 Application and, as

a matter of law, cannot be interpreted as a consent to the application's failure to name Donna Stearns as an inventor. The jury's finding is clear and was reasonable in light of the evidence before them.

### V. Resulting Modifications of Final Judgment

#### A. The Award of Damages to Mechtronics on Counterclaims

The court's determination in this opinion, as explained in Part IV.A, that Sign–A–Way, Inc. cannot be held liable for harm caused by tortious acts of Donna Stearns occurring before incorporation of Sign–A–Way requires that the part of the Final Judgment of April 8, 1998 awarding $28,000 (and associated prejudgment interest) to Mechtronics on its counterclaim must be vacated and the award of damages to Mechtronics in the Amended Final Judgment must be limited to an amount based on the $1,000 finding in answer to Question IV.1(b).

I conclude that the prejudgment interest of $8,400 in the jury finding in answer to Question IV.4 cannot be prorated on a strictly mathematical basis because prejudgment interest is designed to serve a compensatory function to place the victim of a failure to comply with an obligation of payment in the position that the victim would have occupied had payment been timely made. The $8,400 figure was based on a finding of an award of $28,000 for harm caused by Donna Stearns' conduct before incorporation of Sign–A–Way. The $1,000 award was for misappropriation by Sign–A–Way after its incorporation at a later date. I conclude that in these circumstances, it is fair and appropriate for the court to make an equitable allocation of 1/56 rather than 1/28 of the $8,400 as prejudgment interest allocable to the $1,000 finding. Thus the Amended Final Judgment for Mechtronics, in part (4) of the judgment, will be:

> for compensatory damages in the amount of $1,150 (which includes $150 in prejudgment interest) based on:
>
> (a) the jury's finding of $1,000 in answer to Question IV.1(b)(1) and $8,400 in answer to Question IV.4, 1/56 of which, or

> $150, is allocable as prejudgment interest on $1,000; and
>
> (b) the finding for Mechtronics in answer to Question III.1(a)(1).

#### B. Paragraph (7) of the Judgment

Since an Amended Final Judgment is to be entered and no costs are being awarded, paragraph (7) of the judgment must be amended to read:

> All awards of damages bear postjudgment interest at the federal judgment rate of 5.391% per annum from the day of the original judgment, April 8, 1998.

#### C. Setoff

■■■ Mechtronics asks the court to order that its award of $1,150 plus postjudgment interest from April 8, 1998 be separately enforceable even while Mechtronics has not made any payment toward discharge of the judgment against it, in part (2), for $220,000 plus postjudgment interest. Sign–A–Way asks, in contrast, (and as an alternative to its request for complete denial of relief to Mechtronics as a matter of law) that the court order setoff.

I conclude, for the reasons explained below that setoff is equitable and appropriate.

■■■ In ordering final judgment, this court must state the judgment in a way that fairly and finally adjudicates the claims asserted by the parties and facilitates appellate review. Under some specialized bodies of law, lawmakers have adopted rules that limit a trial court's ability to order setoff of different awards within a judgment. Some court decisions have construed identified federal statutes as not permitting the offset of awards of attorney's fees under the statute against amounts awarded on a counterclaim. *See, e.g., Marre v. United States*, 117 F.3d 297, 304 (5th Cir.1997) (discussing precedents). In bankruptcy and other insolvency contexts, some decisions allow setoff in practice (by self-help), even when not formally ordered as part of the terms of the judgment. *See, e.g.*, 11 U.S.C. § 553. In those contexts, setoff is also sometimes allowed in orders in aid of enforcement of a judgment, even when not formally ordered within the terms of the

judgment itself. *See Darr v. Muratore,* 8 F.3d 854, 860 (1st Cir.1993). A court may conclude that such an order in aid of enforcement is appropriate, if the parties' owe each other amounts arising from an identifiable mutual obligation. *Id.* It is also recognized that, in appropriate circumstances, "in the absence of a statute, there is power in equity to compel a setoff of cross demands or of judgments ... whenever necessary for the proper administration of justice." *Massachusetts Motor Vehicle Reinsurance Facility v. Commissioner of Ins.,* 379 Mass. 527, 400 N.E.2d 221, 227 (Mass.1980) (citation omitted). Whenever appropriate motions are made after trial, a trial court has discretion to setoff the judgment awarded to one party on all of its claims against the judgment awarded to the other party if such an explicit offset is likely to anticipate and resolve more contingencies and leave less possibility of uncertainty about what the judgment means. *See James E. Brady & Co. v. Eno,* 992 F.2d 864, 870 (8th Cir.1993) (posttrial judgment for setoff permissible even though verdict forms made jury's calculation of a setoff impractical); *Gass v. Gamble–Skogmo, Inc.,* 357 F.2d 215, 220 (7th Cir.1966) ("judgment on the counterclaim is available as a set-off against the judgment for the plaintiffs").

In this case, the procedural history of the case and the relatively large disparity of the judgments awarded to Sign–A–Way and to Mechtronics create a substantial risk that, if setoff is not ordered, a fair and final adjudication of the case might be temporarily forestalled while the parties engage in strategic behavior with respect to each party's respective decisions whether to pay or not pay the judgment ordered by this court and whether to appeal one or another aspect of the judgment. By ordering setoff the court may provide greater assurance that, as far as possible, all disputes have been resolved and interests against piecemeal litigation have been served.

The integrity and completeness of the final judgment in this case is especially important because of the interdependence among the findings, rulings and conclusions associated with each claim asserted by each side and those associated with other claims asserted by either side. This interdependence is evident, for example, in the court's discussion in Parts III and IV of this opinion with respect to claims under the Lanham Act, under CUTPA, and claims of fraud or misappropriation. The ordering of setoff clarifies the relationship among those findings, conclusions, and rulings, and also may facilitate a precise amendment of the judgment, by a higher court, should it so order, without the need to remand for further hearings and rulings.

For these reasons, the following paragraphs, designated as (8) and (9), will be added to the Amended Final Judgment:

(8) After addition of the respective post-judgment interest to the amounts awarded in Part (2) of this Amended Final Judgment to Sign–A–Way and in Part (4) of this Amended Final Judgment to Mechtronics, Mechtronics must pay to Sign–A–Way the balance of awards to Sign–A–Way in this Amended Final Judgment after deduction of awards to Mechtronics.

(9) The awards to Mechtronics are not separately enforceable before Mechtronics has satisfied Part (8) of this Amended Final Judgment.

### VI. Conclusion

For the reasons explained in the other parts of this opinion, the court will order an Amended Final Judgment.

### ORDER

For the foregoing reasons, it is hereby ORDERED:

(1) Mechtronics' Post–Verdict Motion for Judgment as a Matter of Law (Docket No. 113) is DENIED.

(2) Sign–A–Way's Renewed Motion for Judgment as a Matter of Law (Docket No. 117) is ALLOWED, in part only to the extent described in Part IV above.

(3) Sign–A–Way's Alternative Motion for Setoff of Judgments (Docket No. 116) is ALLOWED, in part only to the extent described in Part V.C above.

(4) The Clerk is directed to enter on a separate document, accordingly, an

AMENDED FINAL JUDGMENT that incorporates the modifications to the Judgment of April 8, 1998 described in Part V above.